ARTHUR HOPSON SAWYER, by Guardian ad Litem, Respondent, *v.* WILLIAM CUBBY et al., Appellants.

A suspension of the power of alienation as to real estate and of absolute ownership as to personal property occurs only when there are no persons in being by whom an absolute estate in possession can be conveyed.

A contingency attached to a legacy which will render it void as an unlawful suspension of the power of alienation, must be one that relates to the person who shall take, and who may not come into being or gain capacity to take and hold within the prescribed two lives, whereby it may happen that there is no one who can alienate within that time.

The will of S. contained a legacy payable to C. in case he paid during the testator's lifetime all assessments, dues and premiums upon any insurance on his life, taken for the benefit of, and payable to, A., his adopted son, and in case such insurance or some part thereof should be actually paid to A. one year from the testator's death. The testator's residuary estate he gave to his executors in trust to pay the income thereof to A. until he arrived

of this clause, *held,* that the bequest to C., although future and contingent, vested as a right upon the testator's death, and so was alienable by him; that while the trust covered the entire residue except the contingent estate bequeathed to C., and there was a suspension of the power of alienation during the existence of the trust, that the suspension was simply for the life of A. or for a shorter period; and that, therefore, there was no unlawful suspension of the power of alienation, and that the bequest was valid.

*Sawyer* v. *Cubby* (73 Hun, 298), reversed.

(Argued May 1, 1895; decided May 21, 1895.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made November 21, 1893, which reversed a judgment in favor of defendant entered upon the report of a referee and ordered a new trial.

This action was brought to have the fifth paragraph of the will of Jennie Sawyer, deceased, declared void, and probate of said will, so far as it relates to said paragraph, canceled and revoked, and that William Cubby, the legatee named therein, be adjudged to have failed to perform the conditions of said bequest, and that the executors be enjoined from paying any portion of said estate to said Cubby.

The portions of said will, so far as material, are set forth in the opinion.

*Walter Welch* for appellant. The absolute ownership of such an amount of the estate of the testatrix as equaled the amount of insurance money that was realized by the payment within one year from her death to Arthur Hopson Sawyer, her adopted son, was vested in the defendant immediately upon the death of the testatrix. (*Manice* v. *Manice,* 43 N. Y. 368 ; *McKenstry* v. *Sanders,* 2 T. & C. 181; 58 N. Y. 662 ; *Embury* v. *Sheldon,* 68 id. 227 ; *Livingstone* v. *Greene,* 52 id. 118 ; *Mitchell* v. *Knapp,* 54 Hun, 504 ; 124 N. Y. 654 ; *Thompson* v. *Conway,* 23 Hun, 621 ; *Martin* v. *Martin,* 131 Mass. 547 ; *Lodder* v. *Hatfield,* 71 N. Y. 92–100 ; *Underhill* v. *S. W. R. R. Co.,* 20 Barb. 455, 459 ; *Nicoll* v. *N. Y. & E. R. R. Co.,* 12 N. Y. 121 ; *In re Toury,* 78 Hun, 521–523 ;

*Towle* v. *Palmer*, 1 Robt. 437; 448; *Finley* v. *King,* 3 Pet. 346; 2 Jarman on Wills [6th ed.], 10; *Thomas* v. *Howell*, 1 Salk. 170; *Avelyn* v. *Ward*, 1 Ves. Sr. 422; *Duddy* v. *Gresham*, 2 L. R. Ir. 442; *Hogan* v. *Curtin*, 88 N. Y. 162; *People* v. *Nevin*, 1 Hill, 154–158; *Smith* v. *Tyler*, 2 id. 648; *Olmsted* v. *Loomis*, 9 N. Y. 423–434; *Van Rensselaer* v. *Jones*, 2 Barb. 668; *T. C. Bank* v. *Bowman*, 43 id. 639–644; *Fitzhugh* v. *Raymond*, 49 id. `649`; *Robinson* v. *Williams*, 22 N. Y. 380; *Young* v. *Wilson*, 27 id. 351–353; *U. W. W. Co.* v. *City of Utica*, 31 Hun, 430; *Lodder* v. *Hatfield*, 71 N. Y. 92; *In re Young*, 78 Hun, 521; *Territt* v. *Public Admr.*, 4 Bradf. 245; *Five Points H. of I.* v. *Ameriman*, 11 Hun, 161; *Caw* v. *Robertson*, 5 N. Y. 125; *Clancy* v. *Ogora,* 4 Abb. [N. C.] 268; *Smith* v. *Edwards*, 23 Hun, 223.) Assuming that the legacy was not vested at the time of the death of the testatrix, yet there was no improper suspension of the absolute ownership of any portion of her estate for a period longer than one life in being at the time of her decease, namely, the life of Arthur Hopson Sawyer. (*Robert* v. *Corning*, 89 N. Y. 236; *Mattison* v. *Wheeler*, 11 Hun, 245; *Butler* v. *Butler*, 3 Barb. Ch. 304; *Post* v. *Hover*, 33 N. Y. 593; *Week* v. *Cornwell*, 104 id. 325, 327; *Roe* v. *Vingut*, 117 id. 204; *Hillyer* v. *Vandewater*, 121 id. 681; *Lorillard* v. *Coster*, 14 Wend. 265; *Everett* v. *Everett*, 29 N. Y. 39; *McKinstry* v. *Sanders,* 2 T. & C. 281; *Goebel* v. *Wolff*, 113 N. Y. 105; *Vanderpool* v. *Loew*, 112 id. 180; *DuBois* v. *Ray*, 35 id. 162; *Croak* v. *County of Kings*, 97 id. 421; *Burt* v. *Valentine*, 52 Barb. 412; *Paige* v. *Palmer*, 48 N. H. 440; *Emerson* v. *Simpson*, 43 id. 475; *Rowlins* v. *Reilley*, 44 id. 9; *Woodard* v. *James*, 115 N. Y. 346; *Manice* v. *Manice*, 43 id. 303; *Heermans* v. *Robertson*, 64 id. 332.)

*Frank Hopkins* for respondent. Mrs. Sawyer intended that Cubby should have an immediate interest in her estate. No title to a legacy vested in Cubby at Mrs. Sawyer's death. Nothing could vest until the condition precedent — the payments above mentioned — occurred. (*Booth* v. *Baptist*

*Church*, 126 N. Y. 215.) The statute requires that the time within which the specified contingency must happen shall be measured by lives — not by any definite time, however short. In the present case this rule is violated. The will provides that the legacy shall vest if the payments are made within a year. (*Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108 ; *Haynes* v. *Sherman*, 117 N. Y. 433.)

FINCH, J. The General Term have reversed the judgment of the trial court which upheld the legacy in dispute, upon the ground that the bequest, as made in the will, worked a suspension of the absolute ownership of personal property for a longer period than two lives in being. The question is wholly one of construction. With the peculiar and unusual contracts which led to the bequest by the testatrix we have nothing whatever to do except so far as it may possibly throw light upon the testamentary intention. The two clauses in the will out of which the controversy springs are as follows : " Fifth. In the event that William Cubby, of Syracuse, N. Y., shall promptly pay all assessments, dues and premiums which, during my life, shall become due and payable on my insurance on my life, in any insurance company, association or organiza- tion, which insurance is or shall be for the benefit of and pay- able to my adopted son, Arthur Hopson Sawyer, and in the event further that such insurance, or some part thereof shall be actually paid to said Arthur Hopson Sawyer one year from my decease, then, in those events, I give, devise and bequeath to said William Cubby a sum of money which shall be equal in amount to the insurance moneys so paid to said Arthur Hopson Sawyer, not exceeding, however, the sum of $6,000. Sixth. All the rest, residue and remainder of my property and estate, of every name and nature and where- soever situated, I give, devise and bequeath unto my executor hereinafter named, in trust, however, to manage, control, hold and keep the same invested in such securities and property as to my executor shall seem proper, and to pay the income therefrom annually or oftener, if it shall seem proper to my

said executor, to my adopted son, Arthur Hopson Sawyer, until he shall arrive at the age of 35 years; and upon his arriving at the age of 35 years to pay, and I direct my said executor to pay, the principal of such rest, residue and remainder over to said Arthur Hopson Sawyer."

Upon these two clauses the General Term held that the legacy to Cubby did not vest in him at the death of the testatrix in possession or in interest, but was a gift both future and contingent. That is probably a correct conclusion, and I shall assume it as the most favorable view for the respondents, and give them the benefit of their contention in that respect. The inference which the General Term drew from the consequent character of the bequest as being both contingent and future is that the ownership is left in abeyance and for a period not measured by lives. I think that is not a correct conclusion. The statutory test of what constitutes a suspension of the power of alienation as to real estate, and of absolute ownership as to personal property, is that it occurs only when there are no persons in being by whom an absolute estate in possession can be conveyed. (*Murphy* v. *Whitney,* 140 N. Y. 545.) Tried by that test I think we shall find that there never was a moment after the death of the testatrix when a good title in present possession might not have been given to the legacy, and the property covered by it, save only during the continuance of the trust created by the sixth clause. Certainly the interest of Cubby, although future and contingent, vested as a right and so was not inalienable by him, for even in the case of land, expectant estates, which include those which are future and contingent, are declared by the statute to be descendible, devisable and alienable in the same manner as estates in possession. (R. S. part 2, chap. 1, title 2, art. 1, § 35.) Cubby could sell his right at any moment. If he sold to those holding the fee of the land, or the absolute ownership of the personalty, subject to its being in part divested by the happening of the contingency, he with such persons could give a perfect and absolute title, and if he joined with them in the sale the purchaser would have an absolute right of

present possession, save only for the suspension accomplished by the trust. Whether that violated the statute becomes the principal question. The trust covered the entire residue and remainder of the property ; the whole of it except the contingent estate bequeathed to Cubby. The legal estate in that residue vested in the trustee for the purposes of the trust, and since the trustee could not alienate the fund, nor the beneficiary sell his interest, there was of necessity a suspension during the running of the trust ; but that suspension was legal and permissible. The duration of the trust by its very terms was limited to the single life of the adopted son Arthur. The limitation of thirty-five years was of a period less than his life and wholly within it, because the trust ended at Arthur's death whether he lived to the prescribed age or not. If he did, the trust terminated during his life; if he did not, it ended, nevertheless, upon his death. It was clearly a trust for the life of Arthur or the shorter period within that life of thirty-five years. The trust, therefore, did not create an illegal suspension, and the moment that it should end the whole fund would be alienable by persons in being. Let us make every conceivable supposition. Take it that Arthur dies ten days after testatrix and before any money has been paid him by the insurance company. The trust ends and the entire estate at once passes. If the construction be that Cubby could take nothing because there could be no payment of insurance to Arthur personally and a payment to his representatives would not fulfill the condition, then, the trust having ended and Cubby's expectancy having failed, the entire legal estate in remainder would be vested either in the next of kin of Arthur or the next of kin of the testatrix, and their transfer would pass a complete and perfect title and a present right of possession. If we say that Cubby's right could survive the death of Arthur before payment made, then a transfer by him joining that by the next of kin either of Arthur or of the testatrix would again pass a complete and present right. For at the end of the trust the property, subject to Cubby's right in it, would necessarily pass, either by the will to Arthur on his

reaching the age of thirty-five, or if he should die earlier would go by his will or descend by the Statute of Distributions in case of his intestacy to his next of kin on one theory, and to the next of kin of the testatrix on another.   We should regard Arthur's estate as vested and its enjoyment only postponed, since the whole accruing interest is given him, in which event his death before the age of thirty-five would end the trust and vest the property in his legatee or next of kin.   Even if it be possible to say that he took no vested estate, but only one conditioned upon his reaching the prescribed age, then his earlier death would again end the trust and the property vest at once in the next of kin of the testatrix, who would take as the result of partial intestacy following the lapsed bequest to Arthur.   So that upon his death, whenever occurring, it inevitably results that a joint transfer by Cubby and by the next of kin either of Arthur or of testatrix, as the construction might be settled, would pass the entire and absolute ownership of the trust fund.   Indeed, Cubby's legacy never went into the trust at all.   The moment the contingency of payment happened the legacy vested in him absolutely and escaped any control of the trust.   If such contingency did not happen, then there would be no legacy, and his rights would disappear.   The test is the inquiry whether always and at any moment after the termination of the trust there were absolute owners of the property who could transfer a good title.   The suggestion, seriously argued and deemed important, that the condition of the legacy requiring within a year payment of insurance to Arthur should be construed as if it read to him and to his heirs and assigns, and that the condition might not be fulfilled within two lives in being, is totally immaterial, for it does not at all follow that a suspension of ownership resulted.   The contingent character of the estate is one thing : its alienable or inalienable character is quite another.   It is not every contingency which works the latter result.   The interjected words would not make the legacy inalienable.   Cubby could sell it ; his assigns could sell it if he transferred it to them ; his next of kin or legatees could do so

if he died. The mistake of the decision is in construing a contingency dependent upon a future event which may or may not occur as necessarily making the legacy inalienable. It does not do so. The contingency which works that result is one relating to the persons who shall take, and who either may not come into being or gain capacity to take and hold within the prescribed two lives, whereby it happens that there is no one who can alienate. Here, at the moment of the ending of the trust there always are or will be ascertained persons in being who, grouped together, have the absolute ownership and can sell, and so there is thereafter no suspension. The suspension worked by the trust is for one life or a shorter period. At its termination there is no further suspension, but the absolute ownership vests at once in Arthur or his representatives, and Cubby and these. joining can at once transfer an absolute and present ownership.

The cases cited on behalf of the respondents do not hold any different doctrine. In one there was a legacy to a corporation not existent or in being, and to a church upon a special trust to pay off a mortgage where the legacy was necessarily made inalienable in the hands of the legatee. (*Booth* v. *Baptist Church*, 126 N. Y. 215.) In another the corporate legatee had not come into being, and the executors held in trust. (*Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108.) In a third there was, first, a trust and then a devise to those who at the death of the widow should prove to be testator's living heirs. (*Haynes* v. *Sherman*, 117 N. Y. 433.) By these cases it is established that a contingency which results in there being no person in existence or capable of taking or of alienating who is yet the intended legatee does work a suspension of ownership since there is no one to give a complete title. That is not the case here. The contingency is an event and not dependent upon the existence or capacity of a person. The true construction of the will is that Arthur had a vested interest in the residue and remainder, subject to the trust and to the contingent right of Cubby, and at Arthur's death whenever occurring, the suspension caused by the trust would end

and the residue vest at once in his next of kin, subject only to Cubby's right. If he released to them they would have the absolute ownership. If he joined them in a sale, the purchaser would have a complete and perfect title.

The judgment of the General Term should be reversed and that of the trial court affirmed, with costs.

All concur.

Judgment accordingly.