Where a testator left to each of his three daughters $100 a month for 10 years, and declared that at the end of that period his residuary estate should be distributed equally among them, and that, if any daughter died without issue before this distribution, her share should be divided equally among the surviving daughters, the future contingent estate by way of cross-remainder which each daughter took in event her sister should not survive the 10-year period did not vest in absolute ownership during that period and could not be alienated, so that this provision offended against Personal Property Law, Laws 1897, p. 507, c. 417, § 2, providing that the absolute ownership of personal property shall not be suspended for a longer period than during the continuance of not more than two lives in being at the time of the death of testator.

2. WILLS—PARTIAL INVALIDITY—CY PRES.

A will left to each of testator's three daughters $100 a month for 10 years, and provided that at the end of that period the residuary estate. consisting wholly of personal property, should be distributed equally among the daughters, and that, in case any of them died before the expiration of the 10-year period, her share should be divided among the survivors. *Held*, that the invalid provision that only the daughters living at the end of the 10-year period should take on distribution might be disregarded, in order to effectuate the general intention of the testator.

3. SAME—CONSTRUCTION—RIGHTS OF LEGATEES—INCOME.

Where a will gave each of testator's three daughters a certain amount per month for 10 years, and provided that at the end of that period the residuary estate should be distributed to them equally, the surplus income and earnings of the estate belong to the three daughters in equal shares.

In the matter of the judicial settlement of the account of Kate A. Perry and others, as administratrices with the will annexed of the estate of Andrew J. Avery, deceased.

See 92 N. Y. Supp. 974.

The questions to be considered in this proceeding arise upon the judicial settlement of the account of the administratrices with the will annexed of the estate of the deceased testator, and involve the validity of the provisions of the will respecting the power of alienation of real property, and the absolute ownership of personal property.  Andrew J. Avery died in the city of Dunkirk, N. Y., on the 11th day of August, 1902, leaving a last will and testament, which was admitted to probate by this court on the 27th of September, 1902, and letters testamentary were thereupon issued to the American Security & Trust Company, of Washington, D. C., the executor named in and appointed by said will.  Subsequently, in proceedings duly had in this court, the letters testamentary issued by the executor were revoked and the accounting parties in this proceeding appointed administratrices with the will annexed.  The testator was survived by his wife, Sara D. Avery, and Mc-Dougal Avery, an unmarried son of full age, and also by three married

daughters, all of full age, namely, Kate A. Perry, Elizabeth R. Armstrong,
and Mary A. Jarvis, the accounting parties. The daughter Kate A. Perry
had two children living at the time of the death of the testator, namely,
Katherine Avery Perry and Edward A. Perry, both infants; the daughter
Elizabeth R. Armstrong has one child, born since the death of the testator,
namely, Andrew Avery Armstrong; and the daughter Mary A. Jarvis has
no living children. The testator at the time of his death was seised in fee
and possessed of one parcel of real property, namely, the homestead located
on Central avenue, in the city of Dunkirk. All the rest of his property was
personalty and of the value of upwards of $350,000.

The will of Andrew J. Avery bears date January 21, 1901, and the main
features thereof may be summarized as follows: First. A direction for
the payment of his funeral expenses and lawful debts, and a bequest to the
Forest Hill Cemetery Association of a sufficient amount to secure the per-
petual care of his burial lot. Second. By the second and third paragraphs
he gives to his wife the life use of the homestead and the personal effects
thereon, together with an annuity of $3,600 per annum, payable monthly,
during her lifetime, and directs his executor to pay out of his estate the cur-
rent expenses of maintaining the homestead and to pay such annuity to his
widow. The bequest to the widow is in lieu of dower rights and all other
claims against the estate, and the testator charges all of his property, both
real and personal, with the payment of the bequest to her. Third. By the
third paragraph the testator also bequeaths an annuity of $50 per month
to his son McDougal Avery, during his natural life, and directs the payment
thereof by his executor and expressly provides "that my said son shall take
no share or further interest in my estate than the said monthly allowance
to him." Fourth. By the fourth paragraph the testator bequeaths to his
said three daughters the sum of $100 per month for the term or period of
10 years, and charges his entire property with the payment thereof, subject
to the previous charge on behalf of his widow, and directs the payment
thereof by his executor. By the fifth paragraph the testator makes provision
for the payment of the annuities to his widow and son after the expiration
of ten years, by directing his executor to purchase from a substantial insur-
ance company two annuities which shall produce, respectively, the sums al-
lowed to his widow and son. In this paragraph we also find the residuary
clause of the testator's will, which reads as follows: "After purchasing
the annuities as last above provided, then I direct my executor shall dis-
tribute the remaining balance of my property, both real and personal of
every name and nature, wherever found or by whatever name known, ex-
cepting, of course, my said residence, household furniture, etc., referred to in
paragraph two (2) equally between my daughters, share and share alike, to
whom I hereby give, devise, and bequeath the same absolutely and in fee
simple." And the testator also, by this clause of the will provides for
the disposition of the homestead and personal effects thereon upon the death
of the widow by bequeathing the same to his three daughters in the follow-
ing language: "I further direct that upon the death of my said wife my
executor shall thereupon distribute equally among my said daughters that
portion of my said estate then remaining in his hands, and to my said daugh-
ters I hereby give and bequeath said balance upon the death of my said wife
absolutely share and share alike in fee simple." Sixth. The sixth paragraph
of the testator's will also makes disposition of the whole residuary estate to
the three daughters at the expiration of 10 years, in the event his wife
shall have then deceased, using the words: "To whom I hereby bequeath
the same absolutely." Seventh. By the seventh paragraph the testator
makes provision for disposition of the several shares given to his daughters,
in the event of the death of any such daughter, leaving issue, subsequent
to the execution of his will, and prior to the final distribution of his estate,
which, by the previous clause, was fixed at the expiration of 10 years; and
in the eighth paragraph he makes provision for the disposition of a daughter's
share who may die, without issue, before the expiration of 10 years. Upon
the construction to be placed upon these two paragraphs depend the con-
trolling questions involved in this case, and hence the advisability of quoting
them in full. They read as follows:

"Seventh. In the event of the death of any of my said daughters leaving issue, subsequent to the execution of this will and prior to the final distribution of my estate, then I direct that my said executor shall pay to the issue of such daughter so deceased the monthly payments and distributive share or portion which its or their parent would have received under the conditions of this will, had such parent survived, my intention being that the issue of each daughter of mine so dying shall receive the same allowance and distributive share or portion of my estate which its parent would have received if living, to which issue I hereby devise and bequeath the same in such a contingency. In the event of any such issue of any deceased daughter shall at the time of the payment of any such monthly allowance, distributive share or portion, be under the age of twenty-one years, I direct that such payment or payments or its share thereof shall be made to the duly appointed guardian thereof.

"Eighth. In the event of the death of any of my said daughters prior to the final distribution of my said estate, without issue, then I direct the discontinuance of any monthly payments which my said executor shall then be making to such daughter and I further direct and provide that any distributive share or portion of my said estate which would have been received by said daughter if living shall be equally divided between such of my said daughters share and share alike as shall survive at the time of such distribution or payments, to which I hereby give, devise and bequeath the same absolutely in said contingency."

Eighth. By the ninth paragraph the testator appointed the American Security & Trust Company, of Washington, D. C., as executor, and directs and empowers said executor to take and have full management and control of his estate, empowering it to manage and control all of his real estate and to receive the rents and income therefrom, "except my said residence, prior to the death of my said wife," and authorizes and empowers it to sell and dispose of his real estate and personal property, in its judgment, subject to the right of use by his wife of said residence during her lifetime, and to execute good and proper deeds of conveyance and transfer of the same.

Moot, Sprague, Brownell & Marcy, for administratrices.

A. E. Nugent, special guardian for infants.

WOODBURY, S. It is contended by the three daughters of the testator, who are the residuary legatees under his will, that they are personally entitled to their respective distributive shares, after setting aside a fund sufficient to pay the annuities respectively bequeathed to Sara D. Avery, widow, and McDougal Avery, son, and to provide for the maintenance of the homestead, and their contention in this respect is based upon the alleged invalidity of the seventh and eighth paragraphs of the will as offending the provisions of the statute against the suspension of absolute ownership of personal property. The question, therefore, of primary importance in this case is whether, under the provisions of this will, the absolute ownership of personal property and the power of alienation of real estate is unlawfully suspended, and dependent upon the answer to this question being in the affirmative arises the further one of the remedy to be applied.

Section 2 of the personal property law (Laws 1897, p. 507, c. 417), as applicable to the primary question involved, reads as follows:

"Sec. 2. The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or if such instrument be a will, for not more than two lives in being at the death

of the testator; in other respects, limitations of future or contingent interests in personal property, are subject to the rules prescribed in relation to future estates in real property."

Section 32 of the real property law (Laws 1896, p. 565, c. 547), which prescribes the limitations on the creation of future, contingent interests in real property, and which is applicable in determining the validity of limitations respecting personal property, by force of the foregoing statute, reads as follows, so far as applicable to the facts of this case, viz.:

"The absolute power of alienation is suspended, when there are no persons in being by whom an absolute fee in possession can be conveyed. Every future estate shall be void in its creation, which shall suspend the absolute power of alienation, by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate."

These statutes are in pari materia and by reason of this fact, as well the fact of the reference by the one to the other, are to be construed together, and hence it has become the settled rule of law in this state that the same general test applicable in determining whether there has been an unlawful suspension of power of alienation of real estate is applicable in determining whether there has been an unlawful suspension of the absolute ownership of personal property. Sawyer v. Cubby, 146 N. Y. 192, 40 N. E. 869; Gilman v. Reddington, 24 N. Y. 9–13; Robert v. Corning, 89 N. Y. 225; Law of Estates Created by Will, vol. 1, p. 391. The power of alienation (except as respects powers expressly granted or conferred) implies absolute ownership, and absolute ownership embraces and carries with it the power to alienate. The statutory test, therefore, of what constitutes a suspension of the power of alienation as to real estate, and of absolute ownership as to personal property, is that it occurs only when there are no persons in being by whom an absolute estate in possession can be conveyed. Sawyer v. Cubby, 146 N. Y. 192–196, 40 N. E. 869; Murphy v. Whitney, 140 N. Y. 545, 35 N. E. 930, 24 L. R. A. 123. The number of persons in which the ownership and right of alienation exists is unimportant. If by their all joining in a conveyance an absolute title can be transferred, the requirements are satisfied. Williams v. Montgomery, 148 N. Y. 519–526, 43 N. E. 57. The court in this case, citing authorities, says:

"The test of alienability of real or personal property is that there are persons in being who can give a perfect title. Where there are living parties who have unitedly the entire right of ownership, the statute has no application. The ownership is absolute whether the power to sell resides in one individual or in several. If there is a present right to dispose of the entire interest, even if its exercise depends upon the consent of many persons, there is no unlawful suspension of the power of alienation. The ownership, although divided, continues absolute."

It is now the settled law in this state that absolute ownership is suspended in only one of two ways: (1) By the creation of a trust which vests the estate in trustees. (2) By the creation of future estates, vesting upon the occurrence of some future and contingent event. Steinway v. Steinway, 163 N. Y. 183, 194, 57 N. E. 312; Wilber v. Wilber, 165 N. Y. 451–456, 59 N. E. 264; Everitt v. Everitt, 29 N. Y. 39–71.

It is important in dealing with questions arising under this statute, limiting the power of alienation and of absolute ownership, that we do not confuse them with the limitations prescribed by section 33 of the real property law, which provides that:

"Successive estates for life shall not be limited, except to persons in being at the creation thereof; and where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto, shall be void, and on the death of those persons, the remainder shall take effect, in the same manner as if no other life estates had been created."

Under this section a vested remainder can be created on two successive life estates and no more, and if a third life estate is attempted to be created prior to the absolute vesting of the remainder it would be cut off and eliminated by force of the provisions of section 35 of the real property law, and the prior estates would be held to be good: Thus, successive life estates to A., B., and C., with remainder over to D. (a person in being), violates the provisions of this section as being an unlawful limitation, but would not offend the statute of perpetuities, because the owners of the several life estates, joining with the tenant in remainder, could convey an absolute fee in possession. In other words, it would satisfy the test that there must be persons in being by whom an absolute fee in possession can be conveyed. Purdy v. Hayt, 92 N. Y. 446–451. Under this rule it is unimportant how many or what estates are existing in the property, whether they are vested or contingent, whether there are many or few owners of the estates and interests, for, if by uniting they can convey an absolute estate in possession, there is no suspension whatever.

Having determined in a given case that there is a suspension of the power of alienation, or of absolute ownership, it then becomes important to inquire whether, under the terms of the instrument creating the estates, the suspension is an unlawful one, because the statute expressly recognizes the right of such suspension for and during the period of the existence of two lives in being at the time of the creation of the estate. But in applying the test it must always be kept in mind that where, by the terms of an instrument creating an estate, there may be an unlawful suspension of the power of alienation or of the absolute ownership, the limitation is void, although it should, by subsequent events, turn out that no actual suspension beyond the prescribed period would have taken place. In other words, to render such future estates created by will valid, they must be so limited that in every possible contingency they will absolutely terminate within the period of two lives in being at the death of the testator or the estate will be held void. Herzog v. Title Guarantee & Trust Company, 177 N. Y. 86–99, 69 N. E. 283, 67 L. R. A. 146. Having stated the rule by which it is to be determined whether there has been any suspension of the power of alienation or absolute ownership, it remains necessary to state the rule to be applied in testing the question of whether such suspension is unlawful, as being in contravention of the statute, where any such suspension is found to exist. In such case the further inquiry must be made whether during two designated lives in being must there be persons in being by whom an absolute

estate in possession can be conveyed or transferred. If this question be answered in the affirmative, there is no undue suspension of the power of alienation or of absolute ownership. Sawyer v. Cubby, 146 N. Y. 192, 40 N. E. 869; Robert v. Corning, 89 N. Y. 225; Herzog v. Title Gurantee & Trust Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146.

Inasmuch as the test to be applied in such cases is as to whether there are persons in being, or persons who must come into being during the period of the authorized suspension, it follows, and our courts have held, that where there is an absolute vesting of the estate—a vesting of the absolute title and the absolute ownership within the prescribed period, with the time of payment or distribution alone postponed, the statute is not violated. Everitt v. Everitt, 29 N. Y. 39; Smith v. Edwards, 88 N. Y. 92; Warner v. Durant, 76 N. Y. 133; Goebel v. Wolf, 113 N. Y. 405–412, 21 N. E. 388, 10 Am. St. Rep. 464; Matter of Murphy, 144 N. Y. 557, 39 N. E. 691. This brings us to the consideration of the nature and character of the estates created by the testator's will, for the purpose of determining whether the statute against perpetuities has been violated.

Under the real property law we have estates in possession and in expectancy. Section 25 provides:

"Estates, as respects the time of their enjoyment, are divided into estates in possession, and estates in expectancy. An estate which entitles the owner to immediate possession of the property is an estate in possession. An estate in which the right of possession is postponed to a future time, is an estate in expectancy."

Section 26 provides:

"Estates in expectancy are divided into (1) future estates; and (2) reversions."

Section 27 defines a future estate as follows:

"A future estate is an estate limited to commence in possession at a future day, either without the intervention of a precedent estate, or on the determination, by lapse of time or otherwise, of a precedent estate created at the same time."

By section 28 a remainder is defined to be a future estate dependent upon a precedent estate. Section 30 defines vested and future contingent estates as follows:

"A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain."

It is conceded that the will creates no express trust and vests no estate in trustees; and a trust will not be implied unless the execution of the will demands it, and never, if to do so will contravene the provisions of the statute, because courts will not set up a trust by implication to be immediately defeated. Every provision of this will, however, can be executed and carried into effect under powers conferred by the will. It is not claimed in this case that the provisions made for the widow and son in any manner violate the statute against perpetuities, and hence it is unnecessary to discuss the character, nature, or extent of their interests or estates. The part of the es-

tate with which we are to deal, in determining whether there has been an unlawful suspension, as I understand the position of counsel, is the estate remaining; after providing for the annuities for the widow and son, and exclusive of the homestead and contents—the latter vesting absolutely in the daughters, subject to the widow's life estate; and I shall so regard the matter and speak of the estate to be dealt with as the residuary estate, for the convenience of reference. This residuary estate consists wholly of personal property. If, however, the residuary interest in the homestead and contents should be claimed to be involved in the question, it would make no difference in the conclusions reached respecting an unlawful suspension, and hence I shall treat it as not involved.

These three daughters take their shares and interests in the estate in severalty and as tenants in common, both by force of the provisions of the statute, which declares that "every estate granted or devised to two or more persons in their own right, shall be a tenancy in common, unless expressly declared to be in joint tenant" (Real Property Law, § 56), and by force of the provisisons of the will, which divides the residuary estate btween the daughters "share and share alike." The whole fund in this case is to be treated as a single fund, for the purpose of management only, and the bequests to the several daughters as separate and distinct from each other. Steinway v. Steinway, 163 N. Y. 183, 57 N. E. 312; Locke v. Farmers, L. & T. Co., 140 N. Y. 135, 35 N. E. 578; Purdy v. Hayt, 92 N. Y. 446. Reading paragraphs "Fifth," "Seventh," and "Eighth," together as forming the testamentary purpose and intent of the testator respecting the three daughters, and applying the provisions of the statute, which we have quoted, respecting the divisions of estates, to the testamentary disposition therein found, it is clear that each of these three daughters take under the provisions of the will (1) a vested future estate in one-third of the residuary estate, subject to be defeated by her death prior to the time of distribution 10 years from the death of testator; and (2) a future, contingent estate, by way of cross-remainder, in the share given to each of her two sisters, in the event of the death of such sister, without issue, within the 10-year period, and upon the further contingency that she herself survive that period. The estates created by the "seventh" paragraph of the will in favor of the issue of a daughter dying subsequent to the making of the will and before distribution, 10 years after the testator's death, are future, contingent estates. As to the character of these several estates generally, see Dana v. Murray, 122 N. Y. 604, 26 N. E. 21; Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811; Gilman v. Reddington, 24 N. Y. 9; Bowditch v. Ayrault, 138 N. Y. 223, 33 N. E. 1067; Purdy v. Hayt, 92 N. Y. 446; Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971; Steinway v. Steinway, 163 N. Y. 183, 57 N. E. 312; Hall v. La France Fire Engine Co., 158 N. Y. 570, 53 N. E. 513; Henderson v. Henderson, 113 N. Y. 1, 20 N. E. 814.

While each daughter takes a presently vested future estate, yet she does not take an absolute title, because of the conditional limitation in favor of survivors and the substitute conditional limitation in favor of issue. She takes a base or qualified fee, determinable by

her death before the time fixed for distribution—in other words, a defeasible estate; and her title will only become absolute and perfect by her surviving the distribution period. It follows, therefore, that she cannot alienate the estate until her title becomes absolute by expiration of the 10-period, as the power so to do will not become existent until that time. Gilman v. Reddington, 24 N. Y. 16; Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971, and other cases last cited. Under these authorites absolute ownership and the absolute power of alienation is suspended in this case by both the conditional limitations, creating future, contingent estates in favor of issue and in favor of survivors.

The future, contingent estates created on behalf of issue are so limited as to render it impossible of present ascertainment as to who will take in the event of the parent's death. They take, if at all, as primary and substituted legatees under the will (in the event of the death of the parent within the 10-year period), and not by inheritance from such parent; but they take as a class, uncertain in number, to be ascertained upon the happening of the event, the death of the parent, which will vest in them the absolute estate. Herzog v. Title Guarantee & Trust Co., 177 N. Y. 97, 69 N. E. 283, 67 L. R. A. 146. Until that event occurs the persons who will take are incapable of ascertainment, nor can it previously be determined whether there will be any isue in being upon the happening of the event. While these conditions create a suspension, the suspension is not an unlawful one, because, there being an absence of any further limitation, the estate vests in the issue of the daughter dying, at the time of her decease; and therefore, at the utmost, the suspension can continue only during the period of one life in being. If the daughter survives the 10-year period her ownership will become absolute, and if she die in the interim those entitled to take as substitute legatees under this provision of the will—her issue—will be capable of ascertainment, and in them will become vested in interest the absolute ownership of the property and the absolute power of alienation, with the time of payment only postponed until the expiration of the 10-year period.

The future, contingent estates created in the daughters by way of cross-remainders under the eighth paragraph of the will, in the event of the death of one or more of them without issue during the 10-year period, introduces the difficulty in this case. It will be seen by reading this paragraph that those entitled to take thereunder are such of the daughters "as shall survive at the time of such distribution or payments," which, as already shown, is fixed at 10 years after the death of the testator. This language injects into the will for the first time a fixed period of time not measured by lives in being, during which the persons entiled to take are uncertain and incapable of ascertainment. The gift is not to the survivor or survivors, at death, but at the time of distribution—the end of the 10-year period. Hence, the persons on whose survivorship the estate is limited to take effect remain uncertain and cannot be determined until 10 years from the death of the testator, a period of time not measured by lives in being. Clearly this provision creates an unlawful suspension. A supposed case, within the range of possibility under this provision of

the will, is aptly put by counsel for the daughters, in his brief submitted in this case, thus:

"At the present time one of the daughters, Mrs. Jarvis, has no children. She has a vested estate, subject to be divested by her death before the expiration of 10 years, and the enjoyment of that estate postponed by the directions of the will. Supposing she died at the expiration of the fourth year, her estate then is not vested in any one. Why? Because the directions of the will are that it shall go to the daughter or daughters who survived at the expiration of 10 years. It is impossible to tell how many of the daughters, or whether any of them, will be alive at that time. Each of the living daughters, however, has a contingent estate, or a possibility of receiving the deceased sister's share, should they live at the expiration of 10 years. We find two people who are presumably entitled to the lapsed estate of Mrs. Jarvis. Supposing, now, another daughter die at the expiration of the sixth year. The portion that came to this daughter secondly deceased has already passed through the life of Mrs. Jarvis and the life of the one who died secondly. It has now run the statutory period of two lives. Do we find it vested absolutely in any one, or is it further suspended? There is one daughter living. She has a presumptive right to it, but her right becomes absolute only on the condition that she shall live at the end of 10 years, or for a further period of 4 years in addition to the two lives through which this estate has already passed. The last survivor receives this estate after it has passed through two lives, and an additional term of 4 years. This is in direct contradiction to the statute, and the absolute period, however short, is fatal."

The case is even stronger than the one put by counsel, because it cannot now be determined to a certainty whether any of the daughters will survive the distribution period, or whether any other of the beneficiaries of the residuary estate now in being will survive that period. Thus it may well be that there are no persons in being, or who will come into being during the life of any two designated persons in existence, who can convey an absolute title to the estate; and, as we have already stated, the rule of law is that:

"To render such future estates created by will valid, they must be so limited that in every possible contingency they will absolutely terminate within the period of two lives in being at the death of the testator, or the estate will be held void." Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86–99, 69 N. E. 283, 287, 67 L. R. A. 146.

Before passing from this branch of the case, it seems advisable to make brief reference to the position taken by counsel for the executor upon a former hearing, whose brief is submitted by the special guardian for our consideration. The position taken was (1) that the daughters take a presently vested estate, subject to be defeated by death within the period of 10 years fixed for distribution, and (2) that such vesting enables the daughters, by uniting with the executor, to convey an absolute title to the estate, and hence the power of alienation and absolute ownership is not suspended at all. It seems clear to me that the statement of the proposition carries with it the refutation. It is utterly impossible for me to so interpret the English language as to make absolute ownership mean the same thing as defeasible ownership, which must be done if, under the statute in question, the right of alienation of a defeasible estate exists in the persons holding the defeasible title. Such an interpretation, as applicable to this case, would have the effect of defeating the clear and manifest intention of the testator, and carried to its logical sequence

would have the effect of defeating the provisions of the real property law authorizing the creation of contingent estates in remainder. It is not my intention to analyze the cases relied upon in support of this position. · Suffice it to say that from my examination of them they do not sustain the doctrine. of the text. If the proposition is sound, then these daughters are presently vested with the absolute ownership of this residuary estate, and, having it in their possession as administratrices, can turn it over to themselves as individuals, and there will be no one to complain. Counsel for the daughters, however, repudiates the doctrine, and, as the interests of their children are unalterably at variance with it, we may pass it without further consideration.

Having determined that the provisions of the will create an unlawful suspension of the power of alienation and absolute ownership, we are next called upon to apply the proper remedy for its correction. It is now so thoroughly settled as to be deemed axiomatic that the cardinal rule in the construction of wills is to arrive at and give effect to the intention of the testator, where such intention may be carried into effect without violation of law, such intention to be derived from the context of the will itself, viewed in the light of all surrounding circumstances; and where, as in this case, it is found that the provisions of the will violate some provision of law, public policy requires, and our courts have established the doctrine, that, through the process of elimination and excision, the offending provisions will be cut off and disregarded, where by so doing the main testamentary scheme and purpose of the testator can be preserved and carried into effect. Courts should at all times endeavor to give effect as far as possible to the intention of the testator expressed in his will, and hence, in applying the doctrine of elimination and excision, such parts only should be eliminated as will cause the least disturbance of the testamentary scheme.

Any lengthy discussion of the law in relation to the application of the doctrine of elimination and expunging of offending provisions of wills, for the purpose of validating them and preserving to the fullest extent possible the testatmentary scheme and purpose of the testator, is rendered superfluous by the able presentation and discussion of the question by Judge Werner in Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917, and cases therein cited by him. In reviewing this doctrine at page 374 of 166 N. Y., and page 919 of 59 N. E., he says:

"Having demonstrated, as we think, that it is not only for the interests of all concerned in the estate, except the plaintiff, but also in direct furtherance of the testator's plan, to uphold this will by simply eliminating the void intermediate trust and its necessary incidents, we have now to inquire whether there is any legal obstacle to such a course. It is axiomatic that courts cannot make new wills for testators who have failed to make valid wills for themselves. While recognizing the force of this truth, courts have from the earliest times been compelled to choose between the alternatives of setting aside certain wills altogether, or of cutting out simply their void provisions. This necessity has led to the rule, which is now firmly established in this state, that when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but when it is possible to cut out the invalid provisions,

so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be. This case seems to present a fair opportunity for the application of the latter rule. Here we are not required to make a new will for the testator. We have a valid life estate, followed by a void intermediate trust for five years, succeeded by a valid ultimate trust and good remainders. The void intermediate trust is for the benefit of the same legatees who take under the ultimate trust and remainders respectively. The excision of the void trust simply gives immediate effect to those ulterior devises which under it were to be postponed for five years. The same persons take in the same proportions as before. By way of recapitulation we therefore conclude that equity and the decided cases concur in requiring us to hold that the invalid parts of this will can be expunged without destroying the will as a whole, or creating even partial intestacy. The life estate with the power of sale during its existence, subject to the widow's consent, can stand. The succeeding trust and its accompanying power of sale, with its incidental directions regarding the occupation of the homestead, or its substitute, are declared void. The ultimate trust and the remainders are held valid to take effect at the conclusion of the life estate. That this disposition of the case is within the rule long followed by this court is attested by the following decisions: In Haxtun v. Corse, 2 Barb. Ch. 507, it was held that where a power in trust, to executors, to lease the real estate of the testator until it could be sold, would have the effect to suspend the absolute power of alienation in such real estate, and was, therefore, void, the power in trust to sell, created by the same will, was nevertheless valid. So in Van Vechten v. Van Veghten, 8 Paige, 105, the chancellor, in discussing the provisions of a complicated will, said: 'Where personal estate is vested in trustees upon various trusts, some of which are valid and others void, the courts must sustain those which are legal and valid if they can be separated from those which are illegal and void.' In Harrison v. Harrison, 36 N. Y. 543, the court, in taking out of the will certain ulterior limitations, which were declared to be void, held that no difficulty was presented by the fact that all the limitations, the good as well as the bad, were embraced in a single trust. In passing upon that question the court said: 'The principle is now well established that the courts lean in favor of the preservation of all such valid parts of a will as can be separated from those that are invalid without defeating the general intent of the testator.' Referring to the particular trust there under consideration the court continued: 'It is no objection to the application of this rule to the case at bar that the limitations, as well those which are good as the one alleged to be bad, are embraced in a single trust. A single trust created for two purposes, one lawful and the other unlawful, is good for the lawful one, although void for the unlawful one.' In Tiers v. Tiers, 98 N. Y. 568, it was held that a void ulterior, contingent limitation did not disturb a primary disposition in trust nor affect other separate parts of the will. In Henderson v. Henderson, 113 N. Y. 1, 20 N. E. 814, the will contained a direction to the executor to make partition as soon after the testator's death as practicable, but reserving to the executor discretion to delay such partition for a period of five years after such death. It was there held that a provision restricting the limitation over to such of the issue of a deceased child 'as shall be living at the time of such partition' was void; but as it was inconsistent with the earlier provisions of the same clause, and unnecessary so far as the perfecting of a testamentary scheme for disposing of the residuary estate was concerned, it should not be allowed to prevail over the preceding direction. The court there said: 'Courts should endeavor, by every reasonable intendment and by a liberal construction, to sustain a testamentary disposition of property, when, in so doing, they can give actual and just effect to the testator's intent and validate at least the main, if not the true, part of a testamentary scheme which contemplates distinct and severable acts.' Analogous to the foregoing cases are Robison v. Robison, 5 Lans. 157, where it was held that 'wills may be void in part for some illegality or violation of law, and valid as to the residue.' * * * So in Kennedy v. Hoy, 105 N. Y. 135, 11 N. E. 391, where a question arose as to the validity of certain trusts, this court said: 'Where several

trusts are created by a will which are independent of each other, and each complete in itself, some of which are legal and others illegal, and the legal can be separated from the illegal and upheld without doing injustice or defeating what the testator might in the emergency be presumed to wish, the illegal trusts may be cut off and the legal permitted to stand.' In Weeks v. Cornwell, 104 N. Y. 336, 10 N. E. 431, a litigation arose over the provisions of a long will in which the testator's intention was obscured by much inappropriate and useless verbiage. There was a devise for life to the testator's widow, an invalid trust to mortgage the same lands and a remainder over on the termination of the trust. It was held that the devise took effect at testator's death as a vested remainder, subject to the life estate in the widow. While the facts in the case last cited differentiate it from the one at bar, it furnishes an interesting illustration of the extent to which courts have gone to prevent intestacy where a will has been made. In emphasizing this rule the learned writer of the opinion in that case quotes from Jarman on Wills (volume 1, p. 643), as follows: 'In the construction of wills the most unbounded indulgence has been shown to the ignorance, unskillfulness and negligence of testators. No degree of technical informality or grammatical or orthographical error, nor the most perplexing confusion in the collection of words will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its author, the faintest traces of which will be sought out from every part of the will and the whole carefully weighed together.' "

In the case of Smith v. Chesebrough, 176 N. Y. 317, 68 N. E. 625, the court, quoting the rule of law laid down in the Kalish Case, and applying it to the case then under consideration, says at page 322 of 176 N. Y., and page 626 of 68 N. E.:

"If the invalid parts of the codicil can be expunged without essentially changing or destroying the testator's general testamentary scheme, the valid parts of the will should be upheld under the rule applied by this court in the case of Kalish v. Kalish, 166 N. Y. 377, 59 N. E. 917, and in many other cases there cited."

What, then, is the testamentary scheme of this testator? He gives to his widow the use of the homestead and personal effects in and about the same for and during the term of her natural life, and charges maintenance of the homestead upon his estate; and, in addition thereto, gives her an annuity of $300 a month during life. He gives to his son, McDougal Avery, an annuity of $50 per month during life. He gives to each of his three daughters an annuity of $100 per month for the period of 10 years next following his decease. The entire estate of the testator is to remain in the hands of his executor and be managed by it until the expiration of the period of 10 years next following his death, and during that period of time the said annuities are to be paid by the executor out of the estate. The entire estate, excepting the homestead and personal effects, in and about the same, is charged with the payment of the annuity to the widow during the 10-year period, and, subject thereto, the said estate is also charged with the payment of the annuities to the three daughters. At the end of the 10-year period the executor is directed to purchase, out of the corpus of the estate, from an insurance company, an annuity which will produce the sum of $3,600 per annum for the benefit of and to be paid to the wife, in equal monthly installments, during the term of her natural life, and a life annuity of $600 per annum, for the benefit of and to be paid to the son, McDougal Avery, in equal monthly installments during his lifetime. These provisions

for the benefit of the widow and the son are declared by the testator to be the entire benefits which they are to receive from his estate. At the end of the 10-year period the annuities provided for the 'daughters are to cease, and all the residue and remainder of the estate (exclusive of the homestead and contents), after making the payments previously directed by the will and providing for the maintenance of the homestead, is to be distributed equally among the daughters, share and share alike, to whom, by the terms of the will, he by present words of gift gives, devises, and bequeaths the same absolutely and in fee simple. This absolute gift of the residue of the estate to the daughters, to be paid to and distributed among them at the expiration of the 10-year period, is then cut down and qualified by the conditional limitation imposed by the seventh and eighth paragraphs of the will. By the "seventh" paragraph, the share of the estate given to the respective daughters is subject to be defeated by the death of such daughters prior to the expiration of 10 years from testator's death, in which event the issue of the daughter so dying, if any there be, is to take the share which the parent would have taken if living, such issues to take in the place and stead of the parent, as substitute beneficiaries. By the "eighth" paragraph of the will the share of the estate given to each of the daughters is subject to be defeated by her death within the 10-year period, without issue, in favor of the surviving daughters; the gift to the surviving daughters as substitute beneficiaries being to "such of my said daughters share and share alike as shall survive at the time of such distribution or payments." The homestead and personal effects in and about the same is given absolutely to the three daughters, subject to the life estate therein of the widow.

We have already pointed out the character of the several estates created in the interested parties by the provisions of this will, and no further discussion of that branch of the case is needed at this time. It will thus be seen that, after providing for his widow and son, the testator intended that his daughters should have his entire estate, provided they survived the distribution period (which in the natural order of events is likely to occur, because their expectancy is in excess of that period), and in the event that they, or either of them, did not survive the distribution period, it is clear that he intended that the share of the daughter dying should go to her issue, or, failing in issue, to the surviving daughters.

Counsel for the daughters urges that in applying the doctrine of elimination and excision to this will we should declare invalid (1) the contingent estate given to each daughter as survivor of a possibly deceased daughter; (2) the contingent estate given to the issue of a possibly deceased daughter; and (3) the 10-year period fixed for distribution. In support of the first two propositions, in addition to what has already been said respecting the suspension of the power of alienation and absolute ownership, counsel urges that these provisions in favor of issue and surviving daughters create future contingent estates, created on a term of years, not vesting in interest during the continuance of not more than two lives in being at their

creation. This position introduces no new difficulty into the case. Section 36 of the real property law provides that:

"A contingent remainder shall not be created on a term of years unless the nature of the contingency on which it is limited be such that the remainder must vest in interest during the continuance of not more than two lives in being at the creation of such remainder, or on the termination thereof."

In respect to the provisions of the will in favor of the issue of a possibly deceased daughter, the contingency, dependent upon which the estate must vest in absolute interest in such issue, as we have already seen, is the period of one life—the life of the parent of such issue—and hence is not within the prohibitive force of this statute. As respects the provisions of the will in favor of each daughter as survivor of a possibly deceased daughter, this statute is offended, as well as the statute against suspension of absolute ownership and power of alienation; but the remedy is alike in both cases and hence no new difficulty is created. We do not concur with the position of counsel, taken in this connection, that the 10-year period is an arbitrary term during which the estates do not vest, but remain contingent, except as to the contingent estate created in each daughter as the possible survivor of a deceased daughter under paragraph 8 of the will, to which we have already alluded. On the contrary, we are of the opinion that the 10-year period, as fixed by this will, is a period during which payment and distribution is postponed; the estate in the meantime, and at all times during that period, being vested in persons who are in being.

We now return to a consideration of the question as to what provisions of the will should be eliminated. The contingent estates created on behalf of the issue of a possibly deceased daughter should not be eliminated, because they are valid limitations and the estates thereby created will vest in absolute interest within the period of one life in being at the time of the creation of the estates. The elimination of the 10-year period would in effect eliminate the contingent estates created on behalf of issue and on behalf of surviving daughters, because, with the 10-year period eliminated, the absolute title to the estate and the immediate right to its possession would vest in the daughters at the time of the death of the testator. As already stated, we are of the opinion that the 10-year period of itself does not offend the statute, because of the vesting of the estate, the time of payment and distribution alone being postponed. If, however, it shall be found that this 10-year period is so dependent upon, connected, and interwoven with the unlawful suspension in favor of surviving daughters under the eighth paragraph of the will as to be inseparable from it, or if the main testamentary scheme can be more fully protected by its elimination, we would then be called upon to expunge it from the will. We do not think, however, that the circumstances require this to be done.

The effect of eliminating the 10-year period from this will would be to defeat the manifest intention of the testator in several important particulars. It would defeat the lien of the widow for the payment of annuities charged upon the estate during that period, and require the present purchase of annuities from the corpus of the estate for the bene-

fit of the widow and son, not contemplated by the testator; it would cut off all contingent estates of any issue of a deceased daughter, who should die during that period, and defeat the intention of the testator in that respect; and it would also defeat the intention of the testator in favor of·surviving daughters, by cutting off the contingent estate created on behalf of survivors in the event of the death of any of the daughters within the 10-year period. In other words, it would defeat every purpose and every testamentary scheme of the testator, respecting the disposition of the residuary estate (excepting the homestead and contents), save only as to these three daughters, and result in the immediate payment to them of the residuary estate as absolute owners. To despoil this will and pervert the testamentary purpose of the testator in this manner should not be permitted unless found to be absolutely necessary.

As already stated, the provisions of paragraph "Eighth," of the will, by creating future, contingent estates in the daughters, as survivors, introduces the difficulty in the case. It seems clear, however, that the provisions of this paragraph and the 10-year period are not so dependent upon or connected with each other as to require both to fail. On the contrary, I am clearly of the opinion that the objectionable features contained in paragraph "Eighth" of the will can be eliminated and expunged, leaving the provisions for the management of the estate during the 10-year period intact and lawful. To eliminate the entire "eighth" paragraph would leave a complete and lawful testamentary scheme throughout. · Such an elimination would, however, defeat the intention of the testator, by cutting off the future, contingent estates given to the daughters, as survivors, in the event of the death of any daughter within the 10-year period without issue; and in the event that such a contingency should arise it would cause the testator to die intestate as to that part of his estate. This, we think, is wholly unnecessary and uncalled for. The objectionable part of this paragraph is not the creation of the contingent estates on behalf of the surviving daughters, but exists in the fact that the survivors who are to take are such of said daughters "as shall survive at the time of such distribution or payment." The statute is violated not by the fact of the gift of the contingent estate to the survivors, but by reason of the conditional limitation which prevents the vesting of the estate in the survivors until the expiration of the fixed term of 10 years. This unlawful limitation is effected by the insertion of the words, "at the time of such distribution or payments," immediately following the word "survive." The elimination of these words, or rather this unlawful limitation, would permit the immediate vesting in interest of the share of any daughter dying within the 10-year period without issue in the survivors; and such vesting would avoid the unlawful suspension of the power of alienation and absolute ownership, because such future, contingent estate would then be limited to take effect within the lives of two persons in being at the creating of the estate. In other words, the future, contingent estate would then be limited to take effect upon the death of one person in being, to wit, the daughter dying, in the same manner as under, the "seventh" paragraph of the will, had the daughter so dying left issue.

The elimination of this objectionable feature of the will would pre-

serve the testamentary scheme of the testator to the fullest possible extent and substantially intact. It would preserve the lien charged upon the estate for the payment of the annuities, and it would preserve the future, contingent estates created on behalf of issue and of surviving daughters. The only change which it could possibly effect in this testamentary scheme would be to accelerate the absolute vesting, in interest, of the estate in the survivors, a condition which our courts do not look upon with disfavor. I am clearly of the opinion that it is this void, ulterior limitation which should be eliminated from the will. The effect of this elimination is to render harmonious every provision of the will, and to carry into effect the apparent testamentary purpose of the testator in every essential particular. It harmonizes with the provisions of the will which vests in the daughters the absolute title to the homestead and contents, subject to the life estate of the widow, and it also harmonizes with the provisions of the will which vest in interest the absolute title in the issue of the deceased daughter (dying within the 10-year period) such daughter's share of the estate; and it seems to me more than probable that it harmonizes with the precise intent of the testator in that respect. It seeems more than likely to me that the words, "at the time of distribution or payments," as used by the testator in this connection, were intended to relate purely to the time of division, and not as creating a conditional limitation respecting the persons who were to take, but that by the careless construction of the sentence and use of these words they give rise to the contention of a different meaning. The conclusions reached, I believe, to be fully justified by the principle involved in the decision in the cases, Henderson v. Henderson, 113 N. Y. 1, 20 N. E. 814, under a will containing a similar provision, Kalish v. Kalish, 166 N. Y. 377, 59 N. E. 917, and the cases cited, and Smith v. Chesebrough, 176 N. Y. 317, 68 N. E. 625.

Counsel for the daughters has urged that we are not justified, under the doctrine of elimination, in expunging a portion of a sentence. What the doctrine does justify is the elimination and expunging of void provisions, and it matters not whether those provisions involve a whole paragraph, a whole sentence, or a part of a sentence. If the ulterior void limitation is found in any part of the instrument and can be separated therefrom without doing violence to other portions of the will, as an aid in preserving the testamentary scheme, it should be eliminated and expunged in whatever form it may exist. It follows, of course, from the conclusions reached, that there can be no distribution of the residuary estate among the daughters at this time.

The only remaining question to be considered is the disposition to be made of the accumulated surplus income and earnings of the estate, in excess of the amount required to meet the annuities provided for by the will. The net earnings of the estate exceed the amount required to meet such annuities by several thousand dollars in each year. These earnings and accumulations arise from personal property. The will contains no direction as to the disposition of such accumulated surplus. If it should be held that the surplus earnings are to be accumulated under any implied direction contained in the will, it would be to the effect that they should be held until the expiration of the 10-year period, and then be distributed as a part of the corpus of the estate. Clearly

such an implied direction would be void under section 4 of the personal property law (Laws 1897, p. 508, c. 417). For all purposes of this case we may treat such accumulations as arising by reason of the fact that no valid directions are contained in the instrument for their disposition. Such being the case, the accumulated surplus earnings in this case belong to the three daughters, in equal shares, as the persons presumptively entitled to the next eventual estate both under the statute (section 53 of the real property law) and by the decisions of our courts. Matter of Crossman, 113 N. Y. 503, 21 N. E. 180; United States Trust Co. v. Soher, 178 N. Y. 442, 70 N. E. 970; Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971; Schermerhorn v. Cotting, 131 N. Y. 48, 29 N. E. 980.

The decree to be entered in this proceeding will be in accordance herewith.

Decreed accordingly.