In the Matter of the Estate of JOSEPH CLENDENIN, Deceased.

Surrogate's Court, Westchester County, December 26, 1940.

*Carroll A. Wilson*, for Carl T. Ulrich and Guaranty Trust Company of New York, as executors, etc.

*Sidney L. Zuckert* [*Robert P. Smith* and *Joseph A. Mitchell* of counsel], for three of the beneficiaries.

*Monroe J. Cahn* [*Monroe J. Cahn, Harold M. Miller* and *Morris Shapiro* of counsel], for David L. Clendenin, respondent.

*Henry R. Barrett, Jr.*, special guardian.

MILLARD, S.  In the petition for the judicial settlement of their accounts, the executors have requested a construction of certain portions of this testator's will.   Three of the four residuary legatees named therein are in accord with the proposed theory of construction advanced by the executors, the fourth has filed objections and urges the adoption of an entirely different construction.

The article of the will in controversy provides as follows:

" *Tenth.*   From time to time I have made various advances to certain of my children, and hereafter may make other such advances, which advances are entered in my books of account as now kept by F. W. Youse of Baltimore, Md., and may hereafter be entered in said books as kept by his successor.   I direct that all such advances so entered on my books at the date of my death shall be regarded as a part of my estate, but that, in lieu of payment thereof to my estate, each such advance to any child shall be deducted from the portion directed by Article Ninth hereof and by Articles Eleventh, Twelfth and Thirteenth hereof, respectively, to be divided or subdivided to or for the benefit of such child or his or her descendants as in said Articles set forth, and whether or not my right to recover said advance is now or hereafter barred by the Statute of Limitations or by any other statute, legal principle or court order operating as a discharge of indebtedness.   All such advances shall be treated as having been made without interest, both before and after my death.   Any advance by me to any of my children not so entered on my books of account shall not be

regarded as a part of my estate, and I hereby forgive and cancel any indebtedness to me represented by any such advance."

Under article " Ninth " of his will, testator directs his executors to divide the entire residue of his estate into four portions, one of forty per cent, two of twenty-five per cent and the fourth of ten per cent. By article " Eleventh " the first three portions are disposed of part outright and part in trust, the forty per cent portion to the eldest son, Joseph, Jr., and twenty-five per cent to each of his two daughters. By article " Twelfth " provision is made for the disposition of the last portion of ten per cent to the younger son, David, who is the objectant in this proceeding.

The principal question of construction involved here is the meaning and effect of the language used in article " Tenth " of the will when applied to or read in conjunction with the books kept by F. W. Youse. The executors and three of the beneficiaries contend, in substance, that the words " advances " and " indebtedness " refer only to such items contained in the books of account as are open charges against the particular beneficiary at the date of testator's death. The fourth beneficiary, on the other hand, contends, in substance, that the words " advances entered in my books of account " refer not only to such open charges but also to all items " entered " in these books at any time which have not been charged off by payment actually received from the individual beneficiary. Great stress is placed upon the testator's use of the word " entered " as indicating an intention to charge the beneficiary with all entries and to ignore the corresponding credit, if any.

That the intention of the testator is to be gathered from within the four corners of his will is a basic precept long adhered to by our courts. " In the construction of a will we seek the intent of the testator as exhibited by the words he has selected. * * * Slight variations of phrase, however, or differences in arrangement may lead us to opposite results." (*Matter of Bump*, 234 N. Y. 60, 63.) Like all canons of construction, however, there are exceptions to its strict application. In *Matter of Martin* (255 N. Y. 248, 254) the court stated:

" In interpreting a will, the cardinal rule of construction is to so construe it as to carry out the intent of the testator.

" The intent of the testatrix cannot be ascertained with reasonable certainty from the will itself. Under such circumstances extrinsic evidence should have been received for the purpose of aiding the court in ascertaining the real intent of the testatrix. (*Morris* v. *Sickly*, 133 N. Y. 456; *Baumann* v. *Steingester*, 213 N. Y. 328; *Matter of Coughlin*, 171 App. Div. 662; affd., 220 N. Y. 681.) "

In the instant case we are referred to extraneous evidence by the will itself. During the course of the trial, the court received in evidence the books of account kept by F. W. Youse, certain memoranda and other records. The objections made to the reception of a portion of this evidence, upon which decision was reserved, are overruled. Such evidence, as well as certain testimony, was received not for the purpose of varying the terms of the will but to aid the court in determining the intention of the testator. (*Matter of Martin, supra.*)

Testator referred to a specific set of books kept by one F. W. Youse of Baltimore, Md. Mr. Youse testified that he personally made all entries in those books from memoranda or oral directions received by him from the testator. By the very terms of the will, therefore, we are directed to the books kept by Youse for the information necessary to carry out its provisions. No one has challenged the accuracy of these books. It is quite apparent that testator used the words " advances " and " indebtedness " interchangeably and in effect thereby referred to the same thing. The books show that over a period of time prior to the death of the testator and to the execution of the will, various sums totaling $202,442.75 were charged to the account of Joseph Clendenin, Jr., and $14,885.35 to Mrs. Bailey, one of the daughters. At the date of testator's death, all items charged to Joseph Clendenin, Jr., with the exception of one in the sum of $27,694.58 and one in the sum of $5,500, had been balanced off by credits entered in the books. All parties agree that Joseph is properly chargeable with the latter two items and Mrs. Bailey with the sum of $14,885.35. The greater part of credits to Joseph, Jr., took the form of charges against the capital account of the decedent. In my opinion the books, like the will itself, must speak as of the date of death. Whether the credits reflected on these books were gifts or actual payments is not our present concern. It is most unreasonable to assume that testator intended to charge the beneficiary, whom he preferred in his will, with items which he himself had already forgiven. In fact, his personal records disclose a contrary intention, a fact which the court cannot ignore in arriving at the true purpose of the testator. Article " Tenth " of the will is, therefore, construed as referring only to such charges against the beneficiary which remained open on the books of the testator at the date of his death.

Further question has been raised as to the manner in which the advances shall be deducted from the respective portions. I am of the opinion and hold that all such advances properly chargeable to the beneficiaries should first be added to the residuary estate as

a whole.   The four portions should then be computed in accordance with the percentage directions contained in the will and the advances then deducted from the portions chargeable with them.   When this is accomplished, the respective portions should again be broken down into the amounts properly payable to the beneficiaries and the amount to be held in trust in accordance with the terms of the will.

For the reasons stated, objections filed on behalf of David L. Clendenin, designated (1) and (2) are overruled and dismissed; objection designated (3) is sustained, and receiving commissions on the real property having a value of $18,250 are disallowed. The will is construed accordingly.

Settle decree.