In the Matter of the Estate of AUGUSTUS O. GOETZ, Deceased.

Surrogate's Court, Erie County, January 13, 1942.

*William Palmer*, for the executors.

*Philip Wickser*, one of the executors in person.

*William R. Pooley*, special guardian.

*Morey & Schlenker* [*E. C. Schlenker* of counsel], for Augustus O. Goetz, Jr., individually.

VANDERMEULEN, S. Augustus O. Goetz drafted and executed his will on March 12, 1924, apparently without the assistance of an attorney. He was quite ill at the time and living with his wife in Atlantic City, N. J., where he had gone to recuperate. His family consisted of his wife, his unmarried son, Augustus O. Goetz, Jr., aged twenty-seven, who was working and living in the city of New York, and his daughter, Katherine, aged thirty-one who had married in September, 1921, and was living with her husband in the city of New York, but had no issue at the time of the making of the will. From the extrinsic facts presented there was a close and friendly family relationship.

The testator died on October 11, 1924, leaving the wife, son and daughter him surviving. The daughter died on March 9, 1938, leaving a son, George Goetz Daniels, born August 17, 1925, her sole issue. She had divorced her husband in 1929 and her son is the sole beneficiary of her estate. Augustus O. Goetz, Jr., the son, married in October, 1931, but has no issue. The widow of the testator died June 13, 1941.

The testator by his will directed the payment of his debts and funeral expenses, appointed his wife sole executrix, without bond, and disposed of his entire estate, as follows:

" *Second.* I GIVE and BEQUEATH to my beloved wife, BLANCHE M. GOETZ, the entire interest and income of my estate during her life and she shall have the power to invest and reinvest the same to her best knowledge and ability.

" Upon her death I GIVE and BEQUEATH my entire estate to my daughter, KATHERINE GOETZ DANIELS, and my son, AUGUSTUS O. GOETZ, JR., share and share alike. Upon the event of either dying without issue, his or her share reverts to the other."

The daughter having left issue her surviving, one-half of the estate became vested in her. The sole question to be determined is, does Augustus O. Goetz, Jr., have an indefeasible vested estate in one-half of the estate of his father, the testator, or does he have only a conditional fee in one-half.

The testator used the word " reverts." I am certain he meant " pass to " or " go to."

In *Matter of Gyllstrom* (172 Misc. 655) Surrogate WINGATE in construing a home-made will said:

" * * * the same meticulous precision of statement and description is not to be required as when the instrument is the result of expert draftsmanship, and that strict technical connotations of words and phrases are seldom applicable in the absence of a clear indication that the testator was aware of their precise meaning." (Citing cases.)

" Where a doubt arises, as in the case at bar, as to the intent of a devisor in using the word ' jointly,' the courts have sought aid in solving the ambiguity by inquiring whether the instrument of devise was prepared by a lawyer familiar with the technical distinctions between different kinds of estates or by a layman who cannot be presumed to have had such knowledge." (*Overheiser* v. *Lackey*, 207 N. Y. 229, 233.)

In construing a will the court is guided by what the testator intended at the time he drew the will. It has been said that the court must sit in the testator's chair.

In *Johnson* v. *Brasington* (156 N. Y. 181, 185) the court said, and it was repeated in *Riker* v. *Gwynne* (201 id. 143, 149): " When we speak in such cases of the intention of the testator we do not always refer to some intention or purpose that he actually had in mind. We mean that when he has expressed himself in ambiguous or doubtful language that the law will impute to his words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice."

From an examination of the will itself and from the family relationship, it is quite evident that the primary thought of the testator was that his property should go to his wife and children. That is the natural thought of a goodly number of testators. The query now is, what construction will best carry out the intention and be most agreeable to reason and justice.

That the intention of the testator might be thwarted through a construction that Augustus O. Goetz, Jr., has a conditional fee in one-half of the estate is apparent. It is highly significant that the only contingency provided for was the death of one of the testator's children. Upon the death of the first child without

issue, his share would be given in fee absolute to the other survivor. The testator made no gift over of the other half in the event of the other (survivor) dying without issue. Thus as to his one-half of the estate, Augustus O. Goetz, the testator, might have died intestate.

One of the most fundamental rules of construction is that a testator is presumed to have intended to dispose of his entire property and intestacy will be avoided if at all possible.

The general rule is that the law favors the vesting of devises or bequests as soon as possible after the death of the testator. (*Riker* v. *Gwynne, supra,* 149; *Bowditch* v. *Ayrault,* 138 N. Y. 222, 228; *Whitman* v. *Terry,* 196 App. Div. 282, 287.)

It is stated in *Connelly* v. *O'Brien* (166 N Y. 406, 408): " The law favors such a construction of a will as will avoid the disinheritance of remaindermen who may happen to die before the determination of the precedent estate. (*Moore* v. *Lyons,* 25 Wend. 119; *Sage* v. *Wheeler,* 3 App. Div. 38; *Matter of Brown,* 93 N. Y. 295; *Delafield* v. *Shipman,* 103 N. Y. 463; *Stokes* v. *Weston,* 142 N. Y. 433; *Bisson* v. *West Shore R. R. Co.,* 143 N. Y. 125; *Corse* v. *Chapman,* 153 N. Y. 466; *Hersee* v. *Simpson,* 154 N. Y. 496; *Goodwin* v. *Coddington,* 154 N. Y. 283; *Matter of Brown,* 154 N. Y. 313.) "

In *Matter of Harden* (177 App. Div. 831; affd., 221 N. Y. 643) the court said (p. 835): " * * * and it is the general rule with respect to the construction of wills that if a will is susceptible of two constructions, one of which will tend to inequality in the distribution of the estate between the children of the testator, and the other will tend to produce equality, the latter construction is favored."

Whether a decision is made that the words of the contingency refer to the death in the lifetime of the testator (substitutional rule) or that the interest of Augustus O. Goetz, Jr., became indefeasibly vested upon the death of his mother, the life tenant, is immaterial in this case so far as the result is concerned, for the son, Augustus O. Goetz, Jr., was living at the time of the death of the life tenant, but I feel that the position of this court as to the law applying to the facts of this matter should be made clear.

In the case of *Stokes* v. *Weston* (142 N. Y. 433) the following clauses of the will were construed:

" *First,* I give, bequeath and devise to my wife, Eliza Stokes, in case she survives me, the use of all my property for and during the term of her natural life, which is in lieu of her dower and her set-off, and distributive share of my estate.

" *Second,* I give, bequeath and devise to my children, Alfred Stokes, Charles E. Stokes and Clara McGee, the rest, residue and

remainder of my property in equal proportions, but in case of the death of my sons, Alfred and Charles E., or either of them, without issue living at the time of his decease, then the share of the one so dying without issue shall be divided equally between my grandchildren, Henry Weston and Porter Weston."

It was said (p. 436): " In the *Matter of the N. Y., L. & W. R. Co.* (105 N. Y. 92) Judge RAPALLO said: ' It may be regarded as a settled rule of construction that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first-named devisee during the lifetime of the testator, and that if such devisee survives the testator he takes an absolute fee; that the words of contingency do not create a remainder over to take effect upon the death, at any time, of the first taker, nor an executory devise, but are merely substitutionary and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator. This construction is uniformly adopted unless there is some language in the will indicative of a different intention on the part of the testator. The reason assigned for this construction has been that, as death is a certain event and the time only is contingent, the words of contingency in a devise of this description can only be satisfied by referring them to a death before some particular period, and no other being mentioned, the time referred to must be presumed to have been the testator's own death. It is also founded upon the principle that, in construing wills, effect should be given, if possible, to all the words used by the testator, and that any other construction than the one which has been adopted would in every case reduce the estate of the first-named devisee to an estate for life; for his death at some time is certain, and the words of inheritance attached to the devise to him would in every case be inoperative.' The rule and its reasons thus stated have been recognized by the courts of England and this State for many years."

The court further said in substance that when this rule had not been applied it was in cases where there was some language of the testator that disclosed a different intention. (See *Mead* v. *Maben*, 131 N. Y. 255.)

In *Dunkel* v. *Homindustries, Inc.* (275 N. Y. 327), the testator gave parts of his estate to his wife and children, provided that if any of the children died without having disposed of the 'share and not leaving lawful issue, the said share went to the survivors, and further provided that if any of the children died leaving lawful issue, such issue shall take the place and stand in the stead of such of his children so dying.

The court said (p. 335): " We are told, however, that paragraph sixteenth might be construed as providing for a substitutionary gift over to such issue ' if any of my children die leaving lawful issue.' We do not find that this paragraph is open to such construction. It is a settled rule of construction that such words of contingency refer to a death in the lifetime of the testator, and ' this construction is uniformly adopted unless there is some language in the will indicative of a different intention on the part of the testator.' (*Matter of New York, Lackawanna & Western Ry. Co.*, 105 N. Y. 89, 92; *Vanderzee* v. *Slingerland*, 103 N. Y. 47.) The rule may yield to slight evidence found in the terms of the will that the testator meant death without issue occurring at any time either before or after his own decease. (*Brown* v. *Gardner*, 233 N. Y. 261.) We do not find even ' slight evidence ' in the will we are now construing."

In *Brown* v. *Gardner* (233 N. Y. 261) slight evidence is found by the subjecting of the devise to the grandson to the following as a condition, viz.: " In case he shall die without issue, then and in that event, all of the estate both real and personal given to him, my said grandson, Charles J. Brown, shall go to and is hereby given and devised to * * * my grandchildren (naming them) share and share alike."

I can see no slight evidence in the matter before me that would warrant departing from the rule laid down in *Stokes* v. *Weston* (*supra*) and followed in the quite recent case of *Dunkel* v. *Homindustries, Inc.* (*supra*), and by Surrogate FOLEY in *Matter of Baumiller* (155 Misc. 815).

I am, therefore, of the opinion that Augustus O. Goetz, Jr., has an indefeasible vested estate in one-half of the estate of his father, Augustus O. Goetz.