SECURITY TRUST COMPANY OF ROCHESTER, NEW YORK, as Trustee, Plaintiff, v. JOSEPH H. BRADLEY et al., as Executors of WALTER E. WOOLSEY, Deceased, et al., Defendants.

Supreme Court, Monroe County, December 23, 1942.

*Spencer, Ogden, Spencer & Gandy* for plaintiff.

*Claude T. Taggart* for Joseph H. Bradley et al., as executors of Walter E. Woolsey, deceased, defendants.

*Ehrich, Royall, Wheeler & Walter* for Leonore Victor Curtis, as executrix of Elizabeth M. Victor, deceased, defendant.

*Edward T. Boyle* for Catherine M. Burlew et al., as executors of Henry L. Burlew, deceased, defendants.

WHEELER, J. This is an action by plaintiff, as trustee, for a final accounting and decree of distribution of the corpus of the trust. In view of the complete admissions in the answers, the complaint may be considered as the equivalent of an agreed statement of facts.

The trust has been recently terminated by the death of the life tenant, and the problem now presented to the court relates to the ownership of the corpus. This necessitates a judicial construction of an indenture of release or assignment of the remainder predicated upon the life estate.

Esther A. Patric died a resident of Cayuga county on March 16, 1911. She was survived by her son, Walter E. Woolsey, who was her sole heir at law and next of kin. She was also survived by a brother, Henry L. Burlew, and a sister, Elizabeth M. Victor. She left a will, the essential provisions of which are as follows: She gave a life estate in a fund of $20,000 to her son, Walter E. Woolsey, with the remainder to his children and in default of

such children with reverter to her estate; she also set up another life estate in a fund of $10,000 for the life of a sister-in-law, Catherine M. Burlew, with the same provisions relating to reverter; she gave the residuary of her estate to Frank E. Cady who was her attorney.

The son filed objections to the probate of this will. Thereupon, and on May 3, 1911, Cady, the residuary legatee, and Walter E. Woolsey, the sole heir at law, entered into an agreement of " compromise and settlement," as a result of which the objections were withdrawn and the will admitted to probate. It is this agreement which the court is now called upon to construe.

The agreement provides in part that Cady " covenants and agrees to release, and does hereby release unto the legal heirs of said Esther A. Patric, the testatrix, all claims to any interest whatsoever in and to the said sums of $20,000 and $10,000, the life use of which is left to said second party and to said Catherine M. Burlew, respectively, under the residuary clause of said will, or otherwise, and that if said sums, or either of them, should ever revert to the estate of said Esther A. Patric, that the same shall pass to the heirs at law and next of kin of said testatrix as property undisposed of by her said will, or otherwise."

In the same paragraph Cady further agreed " that he will pay over to said Walter E. Woolsey * * * from the residuary estate * * * the sum of $27,500." The agreement also provided for the setting up of two trust funds in lieu of the life estates mentioned in the will.

Walter E. Woolsey, the son, died on January 4, 1942, unmarried and without children. We are not here concerned with the $10,000 trust.

The executors under the will of Walter E. Woolsey, deceased, now claim the corpus of the $20,000 trust. A like claim is also being made by the executors under the will of the brother, Henry L. Burlew, deceased, and the executrix under the will of the sister, Elizabeth M. Victor, deceased. All of these parties are now before the court as defendants herein.

Under Mrs. Patric's will, the remainder was given to Cady, the residuary legatee, as a present gift, speaking as of the death of the testatrix. In referring to this remainder we need not be concerned with terminology, whether the remainder was vested or contingent, as in any event it was an expectant estate, which was descendible, devisable and alienable in the same manner as an estate in possession. (Real Property Law, § 59; Cons. Laws, ch. 50.) The same rule also applies to future interests in personal property. (*National Park Bank* v. *Billings,* 144 App. Div.

536; affd., 203 N. Y. 556; *Matter of Lauter* v. *Hirsch,* 67 Misc. 165; *Clowe* v. *Seavey,* 208 N. Y. 496.) If it is necessary to be more definite, the remainder undoubtedly should be considered as contingently vested on the death of the testatrix, subject to being divested only in the event of the son's dying without children. (*Moore* v. *Littel,* 41 N. Y. 66.)

Thus, we are considering a remainder which was assignable, and which in fact was assigned by Cady. But the vital question is, to whom?

In construing the agreement the court must seek the intent of the parties thereto, as exhibited by the words they have selected.

On behalf of the representatives of Mrs. Patric's brother and sister, it is contended that the parties could not have intended to include the son, Walter E. Woolsey as " the legal heirs of said Esther A. Patric." They attach much importance to the fact that the assignment of $27,500 was expressly to " Walter E. Woolsey," whereas the release of the remainder interests was to " the legal heirs of said Esther A. Patric." This phraseology, they assert, indicates an intention to mean the " heirs " excluding the son Walter. They also call attention by the way of analogy to a line of decisions dealing with the construction of wills, holding that a sole heir, who is also a life tenant, should be excluded in defining the word " heirs " as descriptive of remaindermen. (*Matter of Carter,* 99 Vt. 480; *Gross* v. *Hartford–Connecticut Trust Co.,* 100 Conn. 332; *Matter of Bishop,* 126 Misc. 722.)

These and other decisions of similar import rest upon the theory that a testator, by giving his sole heir a life use of a fund, indicates his intention that the life tenant should have no share in or disposition of the remainder. Such a situation is not at all analogous to the one under discussion. Here we are not concerned with the intent of Mrs. Patric, the testatrix. The two parties to this agreement were undoubtedly motivated by a desire to obtain as much as possible of this estate, regardless of the provisions of the will. It is, therefore, the duty of the court to find and give effect to their intention.

At the time this contract was executed in 1911, after the death of Mrs. Patric, her then heirs at law were known. Her son was her sole heir. If it was intended that the son was to take as an " heir," we may of course conjecture as to why he was not expressly named, but if, on the contrary, it was intended that Mrs. Patric's brother and sister, and not the son, were to take the remainder, then we may also speculate as to why they were not expressly named.

It seems clear that we must give the words used by the parties their literal or primary meaning. The term " heirs " in the primary sense is interpreted to mean those who are heirs at the death of the testatrix, rather than those who may be so classified at some later date, as when futurity is annexed to the gift. It is only when a contrary intention appears that this presumption fails. (*Matter of Bump,* 234 N. Y. 60.)

Applying the same reasoning, it seems logical to assume that these contracting parties by the use of the words " unto the legal heirs of said Esther A. Patric," intended to include the son Walter. Such must be the presumption, and this court is unable to discover any contrary intention indicated by the words of the agreement, or to be adduced through the application of any canons of construction.

This conclusion is further fortified by the phrase contained in the contract, " and that if said sums, or either of them, should ever revert to the estate of said Esther A. Patric, that the same shall pass to the heirs at law and next of kin of said testatrix as property undisposed of by her said will." This is simply another way of saying that should the son die without children, the $20,000 corpus is to be distributed to Mrs. Patric's heirs as intestate property.

Furthermore, it is significant to note that the son furnished the entire consideration for this agreement. Valuable interests in addition to the remainder predicated upon his life estate were being released. Included in the same sentence was the release of the remainder on the second $10,000 life estate. Certainly there is no reason to assume that these remainders were being acquired for the benefit of the brother and sister, who were not even mentioned either in the contract or in the will.

Nor is there any legal reason why a life tenant should not take, either by purchase or by descent through intestacy, a remainder predicated upon his own life. (*Doane* v. *Mercantile Trust Co.,* 160 N. Y. 494.)

For the reasons stated, it must be held that the corpus is payable to the executors under the last will and testament of Walter E. Woolsey, deceased.

Findings consistent herewith may be submitted, either on notice or by stipulation, at which time application for costs may be considered.