In the Matter of the Accounting of HENRY D. GORDON, as Executor of HENRY R. GORDON, Deceased.

Surrogate's Court, Orange County, May 12, 1944.

*Louis O. Bergh* as ancillary administrator of the estate of Robert T. Gordon, deceased, in person.

*George B. Overhiser* for executor.

*Abraham Kopald,* special guardian for Walter C. Gordon and another.

TAYLOR, S. This case involves determination of that elusive element known as intent. There is not the slightest difference of opinion in the cases that it is the duty of courts to ascertain the testator's intent and then effectuate it, if it may be done without running counter to established rules of law. (*Deal* v. *Abramson,* 132 F. 2d 252; *Matter of Loomis,* 149 Misc. 417.)

There is no doubt either that one's intention is to be ascertained from the words he used in his will and from the surrounding circumstances at the time of the execution of the instrument. (*Security Trust Co. of Rochester* v. *Bradley,* 179 Misc. 338, affd. 266 App. Div. 943; *Matter of Burling,* 148 Misc. 835; *Matter of Barrett,* 141 Misc. 637.)

In this case the executor has offered proof of circumstances and incidents antedating the execution of the will by some time and in the determination of the question presented, the Surrogate finds nothing of help in that testimony. This case

must therefore be determined upon the wording of the instrument itself.

By paragraph " FIFTH " of his will the testator made a gift of his residuary estate to his two sons and two daughters in this language: " I give, devise and bequeath all the remaining part of my estate share and share alike to my sons, Robert Gordon, Henry Douglas Gordon, and to my daughters, Elizabeth Gordon and Mabel Gordon ". These are plain, simple words of present gift and under this clause, standing alone, each child took a vested one-fourth interest in the residuary. Difficulty has arisen, however, by reason of the turn of facts since the testator's death in the light of paragraph " SIXTH " of the will which provides that " If any of my children should die before me and before my estate is settled, that share or shares shall be equally divided among the survivors ".

The decedent died a resident of this county October 7, 1939, and his will was admitted to probate on the 12th day of March following. All four children survived him, but his son Robert died in Costa Rica March 9, 1940. Jurisdiction over the son's estate was assumed by the First Civil Court of San José, Costa Rica, and while mention is made in the briefs of some of the facts in connection with that administration they are quite irrelevant here. The executor of the father's will paid all the legacies and distributed the residue to the decedent's three living children without any formal accounting, ignoring completely the representative of Robert's estate, notwithstanding his statement in the estate tax proceedings taken after Robert's death, that Robert's estate was entitled to a one-fourth share of the residue. Ancillary administration of Robert's estate has since been had in this county and the question for determination now comes up in connection with a compulsory accounting ordered at the instance of the ancillary administrator. It is the contention of the executor of this estate that as Robert died five months after his father's death and not only before the father's estate was settled but before Robert had a right to compel a settlement, paragraph " SIXTH " became operative and construed according to the contention of the executor precluded Robert's estate from sharing under the will of his father.

Paragraph " SIXTH " of the will sets forth inconsistent contingencies. Obviously, if Robert had predeceased his father, then he would have died before the father's estate was settled, while, on the other hand, if the condition means that no child should share in the estate unless he survived the period of distribution, then that condition would have included also the

condition first mentioned in the paragraph and would have gone a step farther and required survivorship of the administration period to assure absolute vesting. It is earnestly contended in behalf of the executor that the clause should be construed as if the conjunctive " and " were the disjunctive " or ". Even if this theory were adopted the clause would still indicate poor draftsmanship. Needless to say this is another one of those self-drawn wills.

There are many instances in which in order to arrive at what is conceived to be the testator's true intent, " and " has been construed to mean " or " and vice versa. This should be done, however, only when it is necessary to effectuate the testator's intent as that has been found from a reading of the whole will, together with circumstances surrounding the execution of the will, if such circumstances appear to bear out that intention. There should be no transposition of words, or change from one to another, if the intent may be ascertained without so doing and obviously, it should not be done if the result would be a change of meaning. (*Matter of Clendenin,* 175 Misc. 585.)

Our problem is one of first determining the intent and then to substitute the disjunctive for the conjunctive but only if that be necessary in order that the will may verbally express that intent.

There are certain well-known and permanently fixed rules of construction which aid in determining this intent when it does not appear clearly from the instrument itself. Those rules having application in the present instance may be briefly stated to be: (1) vesting is favored (*Matter of Baker,* 146 Misc. 296); (2) divesting of an estate already vested is not favored (*Clason* v. *Clason,* 6 Paige Ch. 541, affd. 18 Wend. 369; *Matter of Wiley,* 111 App. Div. 590, revd. on dissenting opinion 188 N. Y. 579); (3) that a testator is presumed to intend not to die intestate as to any portion of his property (*Matter of Goetz,* 177 Misc. 906); and (4) that a legal rather than an illegal disposition is intended (*Matter of Gimbel,* 180 Misc. 302).

It is urged in behalf of the executor that by the " SIXTH " paragraph of his will the testator intended to limit his gifts to his children only and that the clause was directed more or less intentionally against Robert. No internal evidence indicates any such intention, for the condition or conditions imposed apply alike to each of the four children, and if the testator had desired to limit the benefit of the gift to Robert and to that son alone and to prevent any direct benefit to Robert's family, he could very easily have done so by means of a trust or life tenancy.

There are many cases in the books quite similar to this one insofar as the condition imposed requires that the beneficiary live until the estate be distributed. These cases are quite unanimous in holding that such a provision refers to the time when the beneficiary could legally require a settlement and distribution rather than depending upon the whim of the executor in actually making distribution. (*Finley* v. *Bent*, 95 N. Y. 365; *Smith* v. *Edwards et al.*, 88 N. Y. 92; *Manice* v. *Manice*, 43 N. Y. 303; *Matter of Merrill*, 208 App. Div. 649, affd. 239 N. Y. 517; *Magill* v. *McMillan*, 23 Hun 193; *In Re Denton's Will*, 46 N. Y. S. 2d 145.)

Taking up the rule that a testator is presumed not to have intended to die intestate as to any portion of his property, let us analyze the situation here. Under this setup it was easily possible, although the contingency might be said to be somewhat remote, that all four children might have died before the statutory time for distribution arrived. This would result in intestacy unless it could be said that the last survivor of the four children, regardless of whether he survived the administration period, took an outright gift. (See *Matter of McCombs*, 261 App. Div. 449, affd. 287 N. Y. 557.)

In considering the legality of this clause we need to consider possibilities rather than actualities (*Matter of Wilcox*, 194 N. Y. 288), and no will is to be construed in the light of events occurring subsequently to the maker's death. (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86; *Matter of Mann*, 145 Misc. 360.) This subject and the rule that an estate once vested will not be divested unless there be very clear and unmistakable language to that effect will be pursued further in connection with discussion of the legality of this will provision.

If it should be concluded that " and " should be read as if it were " or ", in order that a child might obtain an outright indefeasible gift, it would be necessary that he survive the administration period. Then his ownership upon the testator's death would be that of a determinable, qualified or base fee — in other words, a fee subject to be divested upon his death prior to the conclusion of the administration period, the ownership becoming absolute at and after the end of such period. Such type of ownership would apply to every one of the testator's four children.

For convenience let us refer to the children as A, B, C and D. Upon the death of A during the administration period his one-fourth interest would pass to B, C, and D, and upon the death of B his original one-fourth interest, together with that portion of A's interest which fell to him, would pass to C and

D, and so it might go on until the entire residue came into the last one of the four, or, as before indicated, all four might not survive the administration period.

Under section 50 of the Real Property Law it is provided that " a fee or other less estate may be limited on a fee, on a contingency which, if it should occur, must happen within the period prescribed in this article ". Within the same article are sections 42 and 43, the first providing that the absolute power of alienation shall not be suspended for a longer period than during the continuance of not more than two lives in being at the creation of the estate, and the second mentioned section provides where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto shall be void, and on the death of those persons, the remainder shall take effect, in the same manner as if no other life estates had been created. Reverting to the possibilities inherent in the clause, upon B's death that portion of A's interest which went to him would have spent its two lives, and then would either vest or go as in intestacy. It could not be determined in whom it vested because carrying on again to the possible conclusions C might predecease D, or the reverse, or again both C and D might not outlive the administration period. Did the testator intend that under any circumstances such a condition might be brought into being? It is a fair assumption that he had no such intention, regardless of whether this latter condition in paragraph " Sixth " should be held to be void for repugnancy, or whether that portion of the residue after having passed through two lives should thereupon immediately vest in their survivors still living, leaving open the possibilities which might occur with respect to the shares of the two survivors. (See *Oxley* v. *Lane,* 35 N. Y. 340; *Vanderpoel* v. *Loew et al.,* 112 N. Y. 167; *Matter of Sutton,* 150 Misc. 137; *Matter of Perry,* 48 Misc. 285.)

*Horton* v. *Horton* (107 Misc. 685) is very similar to the case under consideration. There, the residue was given to a nephew and great-nephew " unless he dies before twenty-one or without family " in which latter event the part of the one so dying was given to another nephew. The great-nephew survived the testatrix, became over twenty-one years of age and the question arose in a partition action whether this nephew was vested with an absolute, unqualified estate in fee in one half of the property devised by the will, or whether the estate in him was subject to being divested in the event of his death without family or without issue. It was held that the devise to the

great-nephew became absolute as soon as he arrived at the age of twenty-one though he did not then have lawful issue.

Almost identical in point of fact with the *Horton* case (*supra*) is that of *Jackson* v. *Blanshan* (6 Johns. 54) and a like conclusion was reached. Reference might also be made to *Roome* v. *Phillips* (24 N. Y. 463).

In *Colby* v. *Doty* (158 N. Y. 323) the question arose with respect to a subdivision of the will by which the testator gave certain real property to his daughter subject to his wife's life use thereof and the residue of his estate to his brother in trust until the said daughter should become of age, at which time the principal was to be paid over to her. The clause goes on to provide " In the case of the death of my said daughter Electa without lawful issue of her body living at the time of her death, then and in that case on her death so without child or children, I give, devise and bequeath the said property and estate hereby devised to my said daughter as follows?' (here are named a number of devisees and legatees). When the daughter became of age her guardian (the trustee having died and the property having been turned over to the guardian) turned over all the property to her. It appears that Electa thereafter died without issue. It was the contention in the *Colby* case, as here, that the donee would need to come within the requirements of the additional or alternate provisions in order to have an absolute fee — in other words, it was contended that Electa took merely a life estate unless she left lawful issue living at the time of her death, and as she had died childless the contingency over took effect at that time. The court held that the intention of the testator was to give the daughter the fee of the real estate and the absolute ownership of the personal property, subject to being divested by her death before obtaining her majority without lawful issue surviving. To hold otherwise, said the court, would create " a hard and unnatural will, in favor of which no presumptions should be indulged ", and that it is " the well-settled rule in this court, that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first-named devisee during the lifetime of the testator, and that if such devisee survives the testator, he takes an absolute fee; that the words of contingency do not create a remainder over to take effect upon the death, at any time, of the first taker, nor an executory devise, but are merely substitutionary and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator."

If this testator had merely provided for a gift over in the event any child should predecease him, then we would have no difficulty here, nor would any problem have been presented if he had provided only that there should be absolute gift over in the event any child should not survive the administration period. The difficulty is that both conditions are imposed and the gift over of the share or interest of any one child not outliving the administration period is not absolute, for the clause provides that if any of the testator's children shall die before the estate·is settled " that share *or shares* shall be equally divided among the survivors " (emphasis mine). We cannot ascribe to this testator an intention that any one or more of the various possibilities suggested should take place in the event of any one or more of the children surviving him and dying during the administration period. The first and· predominant thought of the testator was to provide a gift over in the event any child predeceased him and it is a very fair deduction to say that the subsequent clause was added merely by way of emphasis — the testator meant what he inartificially said, that the share of any child predeceasing him should go to the survivors. The conclusion reached then is that all children having survived the testator became entitled each to an undivided one-fourth share in the residue and that the share of Robert should be paid to his personal representative. (*Clason* v. *Clason*, 18 Wend. 369, *supra.*)

Robert Gordon, testator's grandson and for whom an attorney had been appointed, he being in the military service, appeared personally, was sworn as a witness, and expressly withdrew the objections filed in his behalf. Therefore, there will be no surcharge with respect to this person's share or interest.

·Upon the argument one of the objections made was to the distribution of Robert's share under direct jurisdiction of the Costa Rican court. The Costa Rican estate having been completely settled, except as to Robert's interest under his father's will, distribution can be made here under the jurisdiction of this court through the ancillary administrator. (Surrogate's Ct. Act, § 165; *Matter of Meyer*, 125 Misc. 361, affd. 216 App. Div. 735, affd. 244 N. Y. 598; *Wedemann* v. *United States Trust Co.*, 258 N. Y. 315.)

The executor should not have taken it upon himself to settle and distribute this estate among the three children without having had an accounting and judicial construction of this will. Because of this action and by way of reimbursement to the ancillary administrator for his legal services in bringing about

this compulsory accounting, which preliminary proceeding was vigorously opposed, the costs to be taxed will be charged against the executor personally. Interest will be allowed upon the amount found to be due to Robert's estate, dating from seven months after the original issuance of letters.

Settle decree on five days' notice or by consent.