G. Robert Wither, S.
The testator died in 1897 and his will was admitted to probate that year. The second paragraph of the will provided: ‘1 Second: I give and devise unto my son George Shoff, and also unto my executors hereinafter named, in trust nevertheless, for the use and benefit of my son, Joseph Shoff, all that tract or parcel of land situate in the Town of Parma, Monroe County, New York * * * containing about fifty-six (56) acres of land, and which is now occupied by me as a homestead, together with hereditaments and appurtenances thereunto belonging. Hereby intending that said property is devised and shall be taken and held by my said son George Shoff by my said executors as such trustees for the benefit of my son Joseph, and by Joseph Shoff, as tenants in common, subject to the restrictions herein contained. The said property shall not be conveyed away during the lifetime of my said two sons George and Joseph, without the consent of both of them. Should either of my said sons Joseph or George die without leaving children surviving, I give and devise his share in the said farm to the survivor; and should either or both die leaving children I give and devise his or their share or shares to their respective children that they may leave surviving. I do hereby give unto my said executors hereinafter nominated and appointed, full power and authority at any time in their discretion, to grant and convey unto my said son Joseph Shoff the share in said farm which they, by the terms hereof, hold in trust for his use and benefit. ’ ’
The testator designated his son, Jacob Shoff, and William Halle as executors and trustees of his will, and they duly qualified. In 1901, pursuant to the authority contained in the last sentence of paragraph “ Second ” above quoted, the said executors and trustees conveyed to said Joseph Shoff, his heirs and assigns forever, an undivided half interest in said farm. On April 11, 1904, George Shoff and Joseph Shoff and wife conveyed said farm to their brother, Jacob Shoff, who on the same day reconveyed it to Joseph Shoff; and also on the same day Joseph Shoff and wife executed and delivered a mortgage upon the farm to John Lowden. In December, 1926, they executed and delivered to Gladys R. Beaty, one of the respondents, a second mortgage upon the farm, and in November, 1936, executed an extension of said second mortgage to said Gladys R. Beaty. Joseph Shoff died intestate in 1943, leaving his *689 widow, Matilda, and an only child, Joseph Schoff (Shoff), Jr., the petitioner, as his sole distributees. His widow, Matilda, later that year filed a transfer tax deposition on his estate in which she listed the equity in the farm as an asset. The widow occupied and operated the farm continuously after the death of Joseph Shoff and paid the taxes thereon until January, 1949, when she died intestate, leaving as her sole distributees, two daughters by her first marriage, Gladys R. Beaty and Maud Beaty, respondents, and her son, Joseph Schoff, Jr., the petitioner. George Shoff also died intestate without issue in January, 1949, a few days before Matilda’s death, but in the court’s view those facts are not material here. Jesse B. Hannan, as Director of Public Welfare for the County of Monroe, has substantial claims against the estates of Joseph Shoff and Matilda Shoff, deceased. It appears that all persons who might have an interest in the premises, directly or indirectly, either under the will of Nicholas Shoff, deceased, or in case of his intestacy, have been made parties hereto.
The petitioner seeks a construction of the above-quoted portion of the will of Nicholas Shoff, deceased, which would result in a half interest in the farm now passing by intestacy. He contends that only life estates were devised to George and Joseph Shoff; that they had no power to convey more than that; that upon the death of Joseph Shoff a remainder interest in half of the farm passed to petitioner by virtue of the will of Nicholas Shoff, deceased, and upon the subsequent death of George Shoff without issue and Joseph Shoff not surviving him, the other half of the alleged remainder interest vested in petitioner or devolved from Nicholas Shoff, deceased, by intestacy; and that the mortgage interest of the respondent, Gladys R. Beaty, vanished upon the death of the life tenant mortgagor, Joseph Shoff, Sr.
It is apparent that the executors and George Shoff and Joseph .Shoff, Sr., in 1901 and in 1904 interpreted the will as devising indefeasibly vested interests in the farm, one half to George Shoff and the other half to the executors in trust for Joseph Shoff, with power in the executors to convey such interest to Joseph Shoff at any time in their discretion, Joseph Shoff and George Shoff thus becoming owners in fee of the farm as tenants in common. Everyone interested in the estate has so understood the will and has acted accordingly, until after the death of Joseph Shoff’s widow early this year. The conveyances on April 11, 1904, by George Shoff and Joseph Shoff and wife to Jacob Shoff, and by Jacob Shoff back to Joseph Shoff were made in the customary maimer of that time for a conveyance by two owners in common to one of themselves. Jacob Shoff was *690 obviously a dummy in that transaction. The parties intended and in fact effected a conveyance of the fee to Joseph Shoff at that time. The petitioner now, for the first time, seeks a different interpretation.
The language of the devise is that of a direct present gift of the farm to the testator’s two sons, subject to the trust provision as to the half interest given to Joseph and subject to his consent to its sale. Except for the words “ subject to the restrictions herein contained” and the second sentence following such words, in substance that in the event of the death of either of said sons he gave the share of such one to his children, or, if none, to the survivor, there could be no doubt that the testator devised the fee to his sons, George Shoff and Joseph Shoff, subject to the trust provision and the consent of Joseph to the conveyance of the farm. Although the testator did not use formal words of limitation in the devise to his sons, such as ‘ ‘ and their heirs and assigns ’ ’, neither did he use such words in the alternate devise to their children or the survivor, but merely described it as the share previously provided for his sons. The language as a whole leaves no doubt that the primary devise is of the fee. The “ restrictions ” evidently are the trust provision for Joseph Shoff and the limitation that George Shoff and the two trustees could not convey away the farm without the consent of Joseph. The trustees having seen fit in 1901 to convey to Joseph the half interest which they held in trust, George and Joseph Shoff were then able to convey the fee in the farm, which they did in 1904. Essentially the only question is, ‘ ‘ Did the testator mean the word ‘ restrictions ’ to refer to the sentence of alternate devise as well as to the trust provision and the intervening sentence about conveying away the farm, and if so, did he intend the word to limit to life estates the devise to George and Joseph Shoff or to indicate that the devise to George and Joseph Shoff was subject to their surviving the testator? ”
The provision “ Should either of my said sons die ”, with or without issue surviving, refers to their respective deaths in the lifetime of the testator with or without children surviving the testator. The paragraph read as a whole makes this intent clear and inescapable. As noted the devise to George and Joseph Shoff is a present gift. The devise in the alternative sentence is likewise a present gift, not of a remainder, but of the share which was anteriorly devised to George and Joseph should they survive the testator. It is a substitutionary devise. The one-half interest devised to George was not subject to any trust, and there is nothing to indicate that the testator meant *691 to limit that gift in any manner, except as to conveying it without the consent of Joseph. Since George and Joseph both survived the testator, they took the fee subject only to the trust provision which was later executed, and the substitutionary gift failed to become operative. (Quackenbos v. Kingsland, 102 N. Y. 128; Stokes v. Weston, 142 N. Y. 433; Washbon v. Cope, 144 N. Y. 287; Matter of Goetz, 177 Misc. 906; Bacon v. Sayre, 84 Misc. 462, 469; see Matter of New York L. & W. Ry. Co., 105 N. Y. 89; Vanderzee v. Slingerland, 103 N. Y. 47; Matter of Herrick, 63 N. Y. S. 2d 413; Matter of Wallace, 189 Misc. 473; Restatement, Property, § 253.)
In Stokes v. Weston (142 N. Y. 433, 436-437, supra), the Court of Appeals, in part quoting from Matter of New York L. & W. Ry. Co. (supra), said:
“‘It may be regarded as a settled rule of construction that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first-named devisee during the lifetime of the testator, and that if such devisee survives the testator he takes an absolute fee; that the words of contingency do not create a remainder over to take effect upon the death, at any time, of the first taker, nor an executory devise, but are merely substitutionary and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator. This construction is uniformly adopted unless there is some language in the will indicative of a different intention on the part of the testator. The reason assigned for this construction has been that, as death is a certain event and the time only is contingent, the words of contingency in a devise of this description can only be satisfied by referring them to a death before some particular period, and no other being mentioned, the time referred to must be presumed to have been the testator’s own death. It is also founded upon the principle that, in construing wills, effect should be given, if possible, to all the words used by the testator, and that any other construction than the one which has been adopted would in every case reduce the estate of the first-named devisee to an estate for life; for his death at some time is certain, and the words of inheritance attached to the devise to him would in every case be inoperative. ’ The rule and its reasons thus stated have been recognized by the courts of England and this state for many years.
# # #
‘ ‘ An examination of the cases in this court where the rule has not been applied will disclose the fact that there was some language of the testator indicating a different intention. ”
*692 Matter of New York L. & W. Ry. Co. (supra) and Vanderzee v. Slingerland (supra) were cases of the sort last adverted to by the court in the above quotation. The Vanderzee case was very similar to the one at bar, except that there the testator added to a provision similar to the one at bar the statement (103 N. Y. 47, 52) “ and in case my son Cornelius should die before the provisions of this will become an act ”. The testator had thus clearly shown by these words his intention with respect to the prior provision, and the court so held,
i In Matter of Goetz (177 Misc. 906, 907, supra), the testator provided: “ I Give and Bequeath my entire estate to my daughter, Katherine Goetz Daniels, and my son, Augustus 0. Goetz, Jr., share and share alike. Upon the event of either dying without issue, his or her share reverts to the other.” The daughter died leaving issue. The son had no issue, and the question was raised as to the nature of his interest. The court held that the son’s interest was indefeasibly vested in him. In the same manner the devise to George and Joseph Shoff herein became indefeasibly vested in them upon the death of Nicholas Shoff.
This interpretation of the will is in accord with the authorities, and it simplifies its meaning and effect. Any other interpretation would result, as the briefs of counsel show, in finding, as to both interests, life estates, contingently vested remainders subject to being divested and contingent remainders, and possible intestacy as to the one half of the farm. The will, read as a whole, shows that the testator had no intention of dying intestate as to any of his property, and intestacy is to be avoided where a reasonable interpretation permits. The rule of construction enunciated in the above-cited cases grew out of cases such as this one. The rule applies in the absence of an indication of contrary intent. The language of the will in this case reveals no intent of the testator to limit the estates granted to his sons as suggested by the petitioner; and it appears that this is an appropriate ease in which to apply the above rule. Moreover, the result of the application of this rule is the same as the interpretation placed upon the will by the interested parties themselves for 50 years. Under such circumstances, the court should not strain to find a different interpretation. (Reid v. Sprague, 72 N. Y. 457; Bacon v. Sayre, 84 Misc. 462, supra.)
It is held, therefore, that Joseph Shoff, Sr., died seized of the fee of said farm; that under section 83 of the Decedent Estate Law his son, the petitioner, inherited a two-thirds interest in the farm and his widow a one-third interest therein, both subject to the mortgage interest of respondent, Gladys R. Beaty, and subject to any valid claims of creditors of the estate of *693 Joseph. Shoff, Sr., deceased; that upon the death of Matilda Shoff her one-third interest in the farm descended equally to her three children, to wit, Joseph Sclioff, Jr., the petitioner, and Gladys E. Beaty and Maud Beaty, respondents, likewise subject to said mortgage and any valid claims of creditors of Matilda Shoff, deceased. Submit decree accordingly.